*Claxton & Cook* and *J. L. Kent,* contra.

EVANS *v.* CARROLL, administrator, *et al.*

CULPEPPER, tax-collector, *v.* EVANS *et al.*

CALLAHAN *et al. v.* EVANS *et al.*

DIXON *v.* EVANS *et al.*

CITIZENS COMMERCIAL BANK, for use, etc., *v.* EVANS *et al.*

Nos. 6375, 6386, 6387, 6388, 6389. SEPTEMBER 17, 1928.

*C. L. Shepard,* for plaintiff Evans.

*N. F. Culpepper,* for plaintiffs in error in Nos. 6388, 6389.

*J. F. Hatchett, G. C. Thompson, R. A. McGraw, H. H. Revill, W. R. Jones,* and *Boykin & Boykin,* contra.

BECK, P. J. All the cases stated above are part and parcel of one case in which A. J. Evans was plaintiff, and T. H. Carroll and J. N. Carroll, as administrators of the estate of J. B. Carroll, were defendants. Others became parties by way of intervention. The issues here for determination grow out of these conditions: J. B. Carroll, a resident of Meriwether County and engaged in producing large crops of peaches, cotton, and corn, on October 12, 1925, negotiated with A. J. Evans a contract under the terms of which Evans was to market the peach crop produced on certain lands of Carroll for the year 1926, for which he was to receive a commission or brokerage of fifteen cents per package, unless the grower sold the entire crop or in blocks of ten cars or upwards, in which event Evans was to be paid a commission of seven and one-half cents per package. Evans was to have full control of the sale and disposition of the crop of peaches. Under the terms of the contract Evans agreed to advance seven thousand dollars to Carroll; $3,000 on November 1, 1925, $2,000 on February 1, 1926, and $2,000 on March 1, 1926; payment of said sums, with interest at eight per cent., to be deducted from the sale of the crop of peaches. Under this contract Evans did advance to Carroll the sum of $3,000, as required by the contract. On November 13, 1925, Evans and Carroll entered into another contract containing the same terms and provisions as that of October 12, 1925, except that Evans was to advance Carroll the sum of $2,500, $1,500 of which amount was to be advanced on November 16, 1925, and $1,000 on February 1, 1926. Under this contract Evans advanced to Carroll the sum of $1,500.

J. B. Carroll died on December 5, 1925. His sons, T. H. Carroll and J. N. Carroll, were appointed temporary administrators, and filed their application for appointment as permanent administrators of the estate. Pending their appointments as permanent administrators, under the terms of the two contracts just referred to, Evans was under obligation to advance the sum of $5,000. He was informed that upon their appointment as permanent administrators T. H. Carroll and J. N. Carroll proposed to carry on the

business of the deceased for the year 1926, and that the contracts between A. J. Evans and J. B. Carroll, being executory, must be complied with by Evans. On February 4, 1926, in compliance with the terms of the contracts Evans paid to the temporary administrators $5,000 under the contracts referred to.

On April 5, 1926, the application of T. H. Carroll and J. N. Carroll to be appointed permanent administrators of the estate of J. B. Carroll was granted by proper order of the court of ordinary. On the same day they presented to the court of ordinary their petition setting out that their intestate at the time of his death "was engaged in considerable farming business of all kinds, and more especially in the business of growing peaches for market;" that, "believing that it is for the best interest of the estate, they have exercised the discretion vested in them by the law, and have decided to continue the business of their intestate for the current year 1926;" that, under the two contracts above referred to (copies of which were exhibited), Evans had agreed to market the peach crops of the intestate during the season of 1926, and had advanced $9,500 as required by the contracts; "that, in order to carry on the farming business for the balance of the year 1926 and to cultivate and prepare said crops for market, it is absolutely necessary to have more money than the sum advanced by A. J. Evans, under the terms of said contracts; that it will take, in the opinion of petitioners, not less than eight thousand dollars $8,-000.00) more to properly handle and mature said crops for market that were in progress at the time of the death of the intestate; that said A. J. Evans is willing to furnish said additional money, if authorized by the court," that the administrators desired to make with Evans a supplemental contract (copy of which was attached), providing for the furnishing of additional sums of money to the administrators, and making some slight modification of the original contracts. The administrators prayed "that they be authorized to continue the business of their intestate for the calendar year 1926, and that they be authorized to acquire said advance of A. J. Evans and to make with the said A. J. Evans said supplemental contract to the said two contracts, attached as exhibits A and B; that they shall, as provided by law, fulfill the two said executory contracts above referred to, made with the said A. J. Evans by said intestate in his lifetime." Upon this ap-

plication the ordinary entered his order granting the prayers thereof, authorizing the administrators to carry on the business of the deceased for the remainder of the calendar year 1926, and to make the supplemental contract with Evans as set out, "in order to enable the administrators to carry out the two executory contracts as set forth, as well as to preserve the estate of said intestate." In the supplemental contract referred to appears this provision: "This contract is made in addition to and supplemental to the two contracts entered into between J. B. Carroll, deceased, and said A. J. Evans on the 12th day of October and 13th day of November, 1925, respectively, and not to impair the validity or force of the same."

Evans made total advances under the contracts with J. B. Carroll and the administrators, aggregating approximately $25,000. When the peach season of 1926 came on, the administrators delivered to Evans forty-two cars of peaches for marketing under the contracts referred to, and then refused to deliver thirty-three cars of peaches covered by the contracts. Evans thereupon brought his suit against the administrators and sought to impound the proceeds of the thirty-three cars of peaches handled by the administrators, so that the proceeds of same might be applied upon the indebtedness due to him under his contracts. He alleged that the contracts contemplated that the sums advanced by him were to be used in producing peach crops; and that it was soon discovered that the funds advanced by him had been used in the production of the general crops of corn and cotton and the like; that the estate of J. B. Carroll was insolvent, and that the administrators were refusing to pay Evans and were paying other creditors. Application was made to the court for the appointment of receivers; for marshaling the assets of the estate; and for order requiring creditors to intervene. The application was granted, receivers were appointed, and creditors were required to intervene in the case. The defendants answered, claiming that they were justified in refusing to deliver to the plaintiff the peaches covered by the marketing contracts, for the reasons, that Evans was insolvent, and did not from time to time send in to defendants the canceled notes of the defendants; that he breached the contract; that he failed to render prompt accounting of peaches sold by him; that he failed to make reports to defendants as to market conditions;

that he failed to credit defendants with ten cars of peaches at $1.40 per package; and that on several of the cars turned over to him by defendants he charged a commission in excess of the 15 cents per package, stipulated to be paid by the contract.

By agreement of counsel the case was referred to J. R. Terrell as auditor. Pending the hearing, interventions were filed by other claimants, who set up that the administrators were indebted to them on the following accounts:

H. L. Culpepper, tax-collector of Meriwether County, filed a claim that he was entitled to payment in full, from the funds in the hands of the receivers, of State and county taxes for the year 1926.

J. L. Dixon, O. L. Callahan, and Mrs. Fannie E. Dixon, executrix of the estate of A. P. Dixon, filed their interventions claiming that the administrators were indebted to them for rent of lands for the year 1926, upon which sufficient crops were produced to pay the rent in full, and claiming that they were entitled to payment out of the funds in the hands of the receivers.

McKinney Filling Station, Woodbury Hardware Company, Carroll Mercantile Company, A. M. Gill, Powers & Sims, Georgia Crate & Basket Company, and Mandeville Mills filed their interventions claiming that the administrators were indebted to them for materials, supplies, fertilizers, baskets, crates, and the like, necessary for making and marketing the crop produced during the year 1926, and claiming right to payment out of the funds in the hands of the receivers. The interventions of some of these creditors set out claims which had accrued during the lifetime of J. B. Carroll.

N. F. Culpepper, M. Z. O'Neal, ordinary, and H. H. Revill filed interventions claiming allowance for court costs and fees, which were allowed by the auditor by consent of all parties; and those interventions present no issue for determination here.

G. T. Tidwell filed an intervention claiming a balance due him as a laborer for his services rendered to J. B. Carroll during the year 1925. Dess Brown filed an intervention making claim as a laborer for services during the year 1926.

Woodbury Banking Company filed an intervention claiming an indebtedness on notes held by that bank against J. B. Carroll, but having nothing to do with the operation for 1926 by the administrators.

Mrs. Lena L. Carroll filed her intervention claiming that she was entitled to payment from the fund in the hands of the receivers for money that she furnished to them to preserve the estate of said J. B. Carroll, deceased, and used in making the crops and in carrying on the business of J. B. Carroll, deceased, during the year 1926. She also set up her claim for payment of allowance of a twelve months' support of $3,500, set apart to her in the usual manner. The allowance for year's support was paid by the receivers by the consent of all parties, but the allowance of the claim for money loaned to the temporary administrators was contested by Evans.

T. H. Carroll and J. N. Carroll filed application for allowance of extra compensation as administrators, and for allowance to them as administrators of cash and supplies furnished in the making of the crops for the year 1926.

Citizens Commercial Bank, for the use of A. B. Mobley, superintendent of banks, filed its intervention claiming proceeds of the sale of thirteen mules upon which it held a bill of sale from J. B. Carroll to secure an indebtedness of J. B. Carroll, and also claiming the proceeds of the sale of ten mules sold under a mortgage given to Citizens Commercial Bank by J. B. Carroll. The proceeds arising from the sale of mules covered by the bill of sale were paid over to Citizens Commercial Bank by agreement.

The auditor filed his report, and exceptions thereto were filed by Evans. Upon motion made the cause was recommitted to the auditor for further findings of law and of fact; and upon the filing of his first supplemental report Evans filed exceptions of law and of fact. By direction of the presiding judge the auditor was given instructions to make further findings, and pursuant to these instructions he filed his second supplemental report, to which Evans filed his exceptions of law and of fact. Exceptions to the three reports of the auditor were filed by other parties. The judge entered his decree making the reports of the auditor, original and supplemental, the judgment and decree of the court. Many questions are raised by the exceptions to the findings of the auditor; but they need not all be dealt with separately and particularly, because the decision of the questions referred to depends upon the rulings on certain general applicable principles which are controlling.

■ ■  The case of the original plaintiff is predicated upon the proposition that material and supplies furnished to administrators for conduct of the business of the deceased, when the contracts are approved by the ordinary of the county of the administration, constitute expenses of administration, and are entitled to payment as expenses of administration, under section 4000, par. 3, of the Code. That section is in part as follows: "In the payment of the debts of a decedent, they shall rank in priority in the following order: 1. Year's support for the family. 2. Funeral expenses to correspond with the circumstances of the deceased in life. . . 3. The necessary expenses of administration." After this follow other classifications, two of which will be referred to and dealt with hereafter.

That the administrators of the decedent were authorized to continue and carry on the business of their intestate for the year 1926 (he having died in December, 1925) can not be seriously questioned. Under the circumstances set forth in the original petition in this case, this court has distinctly recognized, in more than one decision, that administrators, duly appointed, and where they had obtained the proper orders, could continue the business of their intestate beyond the year in which the intestate died; especially where he had made contracts and entered into obligations for the purpose of carrying on the business beyond the year in which his death took place. As will be seen from the statement of facts, the decedent had made contracts and entered into obligations as early as October, 1925, which related to money to be furnished which was essential to the carrying on of the business for the year 1926; and a petition had been duly filed by the administrators in the court of ordinary, in which, after setting forth the essential facts, it was prayed that "they be authorized to continue the business of their intestate for the calendar year 1926." And an order was duly passed whereby "said administrators are authorized and empowered to carry on said business for the remainder of the calendar year 1926." And consequently we conclude that in view of the petition presented to the court of ordinary, seeking this order to continue the business, and the express terms of the order itself, the administrators were authorized to continue the business of their decedent. That they were authorized to incur the necessary and legitimate expenses of administration also follows as a neces-

sary consequence; and if they were authorized to incur these necessary expenses, the law would impose upon them the duty of paying them according to the rank and priority prescribed in section 4000 of the Civil Code.

In view of numerous rulings and findings of the auditor, wherein it was held that various claims against the estate of the decedent were valid claims, on the ground that the claimants had furnished funds and supplies which were a part of the necessary expenses of administration, it is necessary to determine whether or not such claims were for necessary expenses of administration. We will consider first the findings of the auditor on the claim of A. J. Evans, the plaintiff. In the original report of the auditor his finding on this branch of the case is as follows: "I find as a matter of law that proper total charge or claim of plaintiff, A. J. Evans, against funds to be distributed in this case is $19,435.40. Plaintiff claims $25,987.10, in which amount is included $4500.00 advanced J. B. Carroll, deceased, and also is included $2,051.70 in said sum as commission on 13,678 packages of peaches. As a matter of law, I find against these last two named items and find the same are not proper claims upon said funds in receivers' hands. From the proceeds of sale of 42 cars of peaches, I find the plaintiff Evans paid to himself $4740.00, which peaches belonged to decedent's estate, said sum so paid plaintiff by himself being for purpose of retiring two notes of deceased, aggregating $4500.00 principal; $240.00 interest. From said proceeds of sale he has also paid himself $2,051.70 as brokerage claimed for himself on 13,678 packages of peaches, according to contract insisted on by plaintiff. As a matter of law, I find against these payments by said plaintiff to himself, and have deducted them from the $19,-435.40, which leaves $12,643.70, which I find to be proper charge against said fund as necessary expenses of administration, and should be prorated with other claims of like character."

In a supplemental report the auditor makes a modification of this finding as follows: "In my former report I found $19,-435.40 to be the proper total charge or claim of plaintiff, A. J. Evans, against funds to be distributed in this case. I found also that plaintiff had paid himself $4,740.00 from proceeds of sale of peaches of the estate of J. B. Carroll, with which he paid off two notes he held against deceased, J. B. Carroll, aggregating $4500.00

principal, and $240.00 interest. And that from said proceeds he also paid himself $2,051.70 as brokerage or commission as set up in my report. The total being $6,551.70. From the total amount of the proper charge or claim of plaintiff, $19,435.40, I deducted the above sum of $6,551.70, which last sum I found against the plaintiff, and left a balance of $12,643.70 to be prorated. This was an error or oversight on my part in making the wrong deduction, and not intended by me. I intended to find then and find now that the above sum of $6,551.70 should be by plaintiff paid into the fund in hands of receiver, and that plaintiff's proper total charge or claim of $19,435.40 be the proper charge or claim against the said fund in this case as necessary expenses of administration, and should be prorated with all other claims of like character or priority as necessary expenses of administration. That the sum of $19,435.40, and not $12,643.70 should be prorated with like claims, and that the sum in hands of receiver to be disbursed or paid out to various claims under order of court should be $24,-568.14 instead of $18,016.44." And in a second supplemental report the auditor finds as follows: "In both my original and supplemental report I found $19,435.40 to be the proper total charge or claim of plaintiff, A. J. Evans, against funds to be distributed in this case. To this amount should have been added the sum of $653.71, which amount, according to plaintiff's amendment filed March 30, 1927, and under the evidence furnished, he advanced or paid to Bibb Basket Company. This aggregated the total of $20,089.11, which is the proper total charge or claim of said plaintiff against the funds to be distributed as aforesaid. This total amount of $20,089.11 is arrived at as follows: "Amounts furnished by plaintiff as evidenced by notes as set forth in plaintiff's petition, and offered in evidence, $13,545.00. Amounts advanced as set forth and itemized by plaintiff in paragraph 11 of his amendment filed September 28, 1926, and evidence offered in support thereof, $5,890.40. Amount advanced to Bibb Basket Company as above set forth, $653.71. Total, $20,089.11."

After carefully considering the exception to this, we are of the opinion that this finding of the auditor was correct in regard to the claims of the plaintiff Evans, as last set forth above. The final findings of the auditor on these claims of Evans is to allow Evans to have his claims for money advanced to the administra-

tors allowed, and full participation to the extent of those claims in the funds to be distributed with other creditors whose claims rank as a part of the expenses of administration. We think that this finding of the auditor was right, though it embraces claims for money advanced to temporary administrators. This money advanced to the temporary administrators was under contracts looking to the carrying on of the business of the decedent for the year 1926; and when the administrators were allowed, by an order of the court of equity properly passed, to continue that business, the money advanced to the temporary administrators became a part of the funds essential to the carrying on of the business and was involved in it, and can not be separated from it.

The majority of the court are further of the opinion that the auditor was right in his ruling in refusing to allow, as a part of the expenses of administration, the item of $4500, plus $240 interest thereon, advanced to J. B. Carroll; and that the court did not err in approving this finding. While this money was advanced under the contracts which J. B. Carroll had made with Evans, and though it was money which was essential to the production of the 1926 crop, we think that it was a debt of the decedent, and could not be regarded as a part of the expenses of administration, having been loaned and advanced to the decedent in his lifetime and necessarily before there were administrators, temporary or permanent. We also agree that the finding of the auditor, which was approved by the judge, that the money claimed for brokerage on the peaches which were not delivered, to be handled by Evans and sold and disposed of by him, should not be accounted an item falling within the necessary expenses of administration. There was no distinct finding by the auditor upon the issue as to whether or not there had been a violation of the terms of the contract of Evans with J. B. Carroll for the handling and sale of the peach crop of 1926 and the stipulated brokerage. Manifestly, if Evans had not in any way violated the contract himself, as the administrators claim, he would be entitled to the brokerage for the sale of the peaches that were raised, and would be entitled to recover that amount; as to which question there was no ruling by the auditor. However, if it be conceded that Evans had not breached the contract, but that the administrators breached it in failing to deliver these peaches to be handled by Evans, the brokerage which

Evans would have been entitled to for the sale of these peaches that were not delivered to be handled by Evans can not be considered as a part of the necessary expenses of administration.

■ We are further of the opinion that the findings of the auditor in the cases of Woodbury Banking Company and Mrs. Lena L. Carroll were correct. We are led to this conclusion by the same reasoning that we applied to the advances made by Evans to the decedent and to his temporary administrators before their appointment as permanent administrators. It was money necessary to the production of the crop. And while these advances may have been made, as contended by Evans, without any express legal sanction or authority, the action taken by the temporary administrators in procuring this money (money that was necessary to the production of the crop) was as much a part of the necessary expenses of administration as the money advanced by Evans. It is true that no express order authorizing these advances by the Woodbury Banking Company and by Mrs. Lena B. Carroll is shown to have been taken or granted, but the order that was finally taken, allowing the temporary administrators to continue the business for 1926, should be construed as ratifying any steps taken by the temporary administrators which were essential to the continuance of the business which was afterwards authorized. This is applying to these particular claims of the Woodbury Banking Company and Mrs. Lena L. Carroll the same principle upon which we have held that the advances by Evans to the temporary administrators should have been allowed by the auditor as a part of the necessary expenses of administration. We do not think that the fact that Evans, with reference to certain claims, took express orders authorizing the advances, gives him precedence or priority over other claimants who made advances for the same specific purposes. They were as much protected by the general order to continue the business as was Evans. And so we hold that the loans by the Woodbury Banking Company and Mrs. Lena L. Carroll to the temporary administrators were not loans to T. H. Carroll and J. N. Carroll personally, and the judgment of the court below should not be reversed for holding that the sum of $603 should be paid by the temporary administrators to the Woodbury Banking Company, and the sum paid by them to Mrs. Lena L. Carroll should be charged to the administrators and recovered

from them; and the holding of the court upon this question was correct.

■ Nor do we think that the court erred in sustaining the findings of the auditor to the effect that the claims of the Woodbury Hardware Company, McKinney Filling Station, Carroll Mercantile Company, A. M. Gill, Dess Brown, Powers & Sims, Georgia Crate & Basket Company, Mandeville Mills, and Mrs. Lena L. Carroll should be allowed to participate on a pro rata basis with the claim of A. J. Evans in the distribution of the fund in the hands of the receiver. It is not necessary to take up and discuss each of these claims in detail. We think that these claims fall under the head of necessary expenses of administration, for the reasons stated in disposing of the claims of Evans.

■ Under the evidence it can not be said as a matter of law that the court erred in approving the finding of the auditor to the effect that the administrators were entitled to their regular commissions and also to extra compensation in the sum of $1500. There are no errors in the other rulings excepted to by Evans.

■ The ruling made in the sixth headnote requires no elaboration.

■ J. L. Dixon, Mrs. O. L. Callahan, administratrix, and Mrs. Fannie E. Dixon except to the judgment holding that their claims for rent for the year 1926 were not specially allowed and ordered paid in full out of the fund in the hands of the receiver, but were only allowed as a part of the necessary expenses of administration and ordered to prorate with other items of expenses of administration. This exception is well taken. Section 3341 of the Code reads as follows: "Such general lien of landlords shall be inferior to liens for taxes and the general and special lien of laborers, but shall rank with other liens, and with each other according to date, the date being from the time of levying a distress warrant. The special liens of landlords for rent shall date from the maturity of the crops on the lands rented, unless otherwise agreed on, but shall not be enforced by distress warrant until said rent is due, unless the tenant is removing his property, or when other legal process is being enforced against said crops, when the landlord may, as provided elsewhere in this Code, enforce said liens, both general and special." This section gives the landlord a special lien for rent on the crops, from the date of the maturity of the

crops, on the lands rented. And we do not think there is any conflict between the provisions of this section and section 4000, supra. The debts due for rent, referred to in section 4000, are not, in our opinion, debts for rent arising during the year in which the crops upon the rented land are grown, but this provision refers to debts of the decedent arising by contract made by him prior to the time of his death. The fact that the crop upon which the lien is here asserted was raised upon lands upon which the administrators were continuing to conduct the business of the decedent does not deprive the landlord of the special lien provided for under section 3341. It follows from what we have last said that the judgment in the case of Dixon et al. v. Evans et al., No. 6388, must be reversed, because of the approval of the finding of the auditor which denied the claims of the plaintiffs in error in this case to the priority of their claims for rents. Inasmuch, however, as this is the only ruling of reversal, the case need not be referred to the auditor in its entirety, but should be referred to him upon this sole question, so that he may make a finding as to the amounts due for the rents for the year 1926, which we have held should be accorded priority, and allow them in full if the proceeds of the crop for that year were sufficient to meet them; and direction is given accordingly. After the finding upon this question, as this will require a deduction from the funds in the hands of the administrators for the purpose of paying the expenses of administration, the amounts going to the other claimants of the funds will have to abate proportionately.

In the bill of exceptions in the case of Citizens Commercial Bank, for use, etc., v. Evans et al., it is recited that "The auditor in his first supplemental report, in paragraph 1, ruled as follows: ' With reference to the motion of the Citizens Commercial Bank, for the use of A. B. Mobley, superintendent of banks, to re-refer for further findings and rulings in the intervention of said Citizens Commercial Bank, I find as a matter of fact the following: That the intervenor, Citizens Commercial Bank, for the use, etc., is the holder of a certain mortgage dated November 3, 1925, made and executed by J. B. Carroll to J. L. Dixon or order, which said mortgage is properly witnessed and recorded and duly transferred by said J. L. Dixon, on November 10, 1925, to Citizens Commercial Bank. Said Mortgage was given to secure a note dated October 1,

1927 [1925], and due October 1, 1926, with interest thereon from date of note at eight per cent. per annum, which is due and unpaid. Said mortgage created a lien on ten mules described therein, which said mules were sold by order of court by receivers for the sum of $750.00, which sum went into the hands of said receivers. In my original report I held that this mortgage was not entitled to participate in funds in receivers' hands, and I adhere to that ruling and finding.' " We are of the opinion that the auditor ruled correctly, and that the court did not err in sustaining the ruling.

■ The findings of the auditor which were approved by the court, not specially dealt with, are not erroneous, and as to them the judgment of the court below should not be disturbed. It follows from what we have said that the judgment of the court below is *affirmed* in No. 6375. The cross-bills of exceptions in Nos. 6386 and 6387 are *dismissed*. The judgment is *reversed* in No. 6388, and is *affirmed* in No. 6389. *All the Justices concur except Beck, P. J., who dissents from the ruling in headnote 1 (a).*

RUSSELL, C. J., specially concurring. The $4500 advanced by Mr. Evans to Mr. Carroll before his death can not be classified as an expense of administering his estate. I concur, though doubtfully, in the opinion that an advancement made to an administrator to carry on a going business of his intestate may perhaps be properly called an expense of administration. Especially in this case where it is a matter of common knowledge that more than one calendar year is required to make a crop of peaches for commercial purposes. The term "expenses of administration" may properly include any expenditure or advancement necessary for the winding up of the estate of a deceased person to the best advantage of all persons concerned, and especially his creditors. In my opinion a loan of $4500 in money to a live person intended to be used by him in the conduct of a business can not be under any circumstances called an expense of administration, because there can be no administration until that person has died.

BECK, P. J. I dissent from the ruling in headnote 1(a) and the corresponding part of the opinion. This item of $4500, with interest of $240 thereon, was advanced under the same executory contract as the loans or advancements made to the temporary and permanent administrators, and was as much a part of the expenses

of administration as the money subsequently advanced. It was necessary to the production of the crop, and entered into it. It was contemplated in the executory contract which the administrators afterwards carried out; and I see no reason for refusing to allow that, if the other money advanced to the administrators is to be allowed as a part of the necessary expenses of administration.