748 N.W.2d 17 (2008)
275 Neb. 548
J.R. SIMPLOT COMPANY, appellant,
v.
James JELINEK, as Personal Representative of the Estate of Edward F. Jelinek, deceased, and Individually, et al., Appellees.
No. S-06-666.
Supreme Court of Nebraska.
April 24, 2008.
*20 David A. Dudley and Jacob P. Wobig, of Baylor, Evnen, Curtiss, Grimit & Witt, L.L.P., Lincoln, for appellant.
Terry Curtiss, of Curtiss, Moravek, Curtiss, Margheim & Miller, P.C., L.L.O., Alliance, for appellees.
Heavican, C.J., Wright, Connolly, Gerrard, Stephan, McCormack, and Miller-Lerman, JJ.
HEAVICAN, C.J.

INTRODUCTION
This case presents several issues relating to a claim filed against the estate of Edward F. Jelinek. We are first asked to determine whether crop services provided to the estate by J.R. Simplot Company (Simplot) are administration expenses under Neb.Rev.Stat. § 30-2485(b) (Reissue 1995). If so, then Simplot's claim should be allowed, because under § 30-2485, no statute of limitations barred the claim. However, if the claim was not for administration expenses, we are presented with the question of whether Simplot's "Demand for Notice" or, alternatively, the filing of this suit in district court, operated as a timely claim under Neb.Rev.Stat. § 30-2486 (Reissue 1995).

FACTS
The facts of this case are largely uncontested. Edward passed away testate on May 21, 1999, leaving an estate primarily consisting of approximately 4,500 acres of farmland. James Jelinek, Edward's grandson, was named personal representative of the estate. Edward's will specifically authorized the personal representative to keep the administration of his estate open for up to 15 years and directed that the farming operation on the estate should be continued during that time.
In September 1999, crops located on land owned by the estate suffered significant hail damage. The crops were uninsured. Accordingly, there were insufficient funds to pay operating debt due in 1999. Due to the inability to pay this debt, the lender declined to provide further financing of the estate's operations. New financing was obtained through Ag Services of America, Inc. (Ag Services). This financing lasted from the 2000 through the 2002 growing seasons. In order to receive goods or services under this new agreement, the estate had to specifically request the goods or services. Ag Services would then either approve or decline the request, with Ag Services actually purchasing the goods or services. These goods and services were then sold to the estate at a markup.
At this same time, the estate's account with Simplot was also changed to cash on delivery, meaning that no goods or services were to be provided without payment up front. During the 3 years at issue, there were times when Ag Services would not approve certain requests made by James on behalf of the estate. Given the payment status at Simplot, the estate could not itself contract for the goods or *21 services. Nevertheless, Simplot's local branch manager continued to provide certain goods and services to the estate. The payment status was circumvented with the manager simply keeping track of the goods and services provided, but not issuing invoices. It is clear from the record that with respect to the goods and services at issue, the manager was aware that he was dealing with James in James' capacity as personal representative for Edward's estate.
Eventually, the circumvention was discovered. On February 26, 2003, the goods and services provided to the estate were invoiced for a total of $161,053.78. That invoice provided for a due date of March 20, 2003. The estate did not pay that invoice and was billed again on March 26 in the amount of $174,504.98, with a due date of April 20. That invoice was also not paid.
The reason put forth by James for the nonpayment of the bill was that during the 2000 growing season, some of the estate's dryland corn fields had a lower yield than James had expected. James believed the cause of this poor yield was the spraying of an herbicide recommended by Simplot, and he estimated a loss of approximately $150,000 to $160,000. James refused to pay the Simplot bill despite acknowledging that at least some of the goods and services were provided. James' refusal was based upon his belief that Simplot owed the estate for the poor yield caused by the spraying of the herbicide.
On June 10, 2003, Simplot filed a "Demand for Notice" in the county court for Box Butte County. That demand stated that "[Simplot] has a financial interest in the estate of the deceased and holds an outstanding claim," but included no basis for the potential claim and listed no amount due.
On March 25, 2004, Simplot filed this suit against the estate in Box Butte County District Court. The estate denied it was liable and asserted a cross-claim against Simplot for $175,085.09 for damages to the estate's 2000 dryland corn crop. That cross-claim was later dismissed by the district court. On May 16, 2006, the district court dismissed Simplot's claim, finding the claim was barred by the statute of limitations set forth in § 30-2485. The district court also found Simplot's "Demand for Notice" did not qualify as a claim under § 30-2486.

ASSIGNMENTS OF ERROR
On appeal, Simplot assigns, restated, that the district court erred in (1) determining that expenses of conducting farm operations were not "administration expenses" under § 30-2485(b); (2) determining that Simplot's filing entitled "Demand for Notice" was insufficient as a filing of claim under § 30-2485(b); (3) not determining that the Estate's account with Simplot was open, which would toll the applicable statute of limitations; and (4) determining Simplot's equitable actions were barred.

STANDARD OF REVIEW
[1] Statutory interpretation is a question of law, which an appellate court resolves independently of the trial court.[1]
[2] The correct standard of review for a trial court's exercise of equity jurisdiction is de novo on the record, with independent conclusions of law and fact.[2]

*22 ANALYSIS
On appeal, Simplot's basic contention, broadly stated, is that the district court erred in concluding that its claim was barred by the statute of limitations set forth in § 30-2485(b). Section 30-2486 provides a framework for analyzing this assertion. That section provides that someone with a claim against an estate may present it in one of two ways. Under § 30-2486(1), the claim may be filed with the probate court. Alternatively, under § 30-2486(2), a claimant may file suit to recover the amount of the claim, so long as the suit is filed within the time period provided for filing the claim with the estate.
The time period for filing claims with the estate is set forth in § 30-2485(b). That section generally provides that with respect to claims arising at or after the death of the decedent, as is presented in this case:
All claims, other than for administration expenses, against a decedent's estate which arise at or after the death of the decedent, including claims of the state and any subdivision thereof, whether due or to become due, absolute or contingent, liquidated or unliquidated, founded on contract, tort, or other legal basis, are barred against the estate, the personal representative, and the heirs and devisees of the decedent, unless presented as follows:
(1) A claim based on a contract with the personal representative, within four months after performance by the personal representative is due;
(2) Any other claim, within four months after it arises.[3]

Simplot's Claim Not For Administration Expenses.
[3] In its first assignment of error, Simplot argues that its claim was an administration cost and, under § 30-2485(b), did not need to be filed with the probate court within the 4-month time period. In support of this contention, Simplot argues that the overriding goal of Edward's will was a concern over the continuation of his farming operations and that Edward had specifically authorized keeping the estate open for up to 15 years. Simplot asserts that given the possibility of a long-term administration of the estate, the crop services it provided were necessary to maintain the cropland, were incurred in the administration of the estate, and therefore were administration expenses as envisioned by § 30-2485(b).
The current Nebraska Probate Code was enacted in 1974 and became operative on January 1, 1977. While it closely follows the language of the Uniform Probate Code, it differs in one particular way that is significant to our analysis in this case. While the Uniform Probate Code requires all claims to be filed with the estate or the probate court,[4] § 30-2485(b) specifically exempts administration expenses from such requirement. It appears that Nebraska is unique in providing such an exemption. The term "administration expenses" is not defined in the probate code. Nor has the term been precisely defined by Nebraska case law, though the topic has been generally discussed.
In cases decided since the adoption of the current probate code, this court has concluded that expenses paid to engage in litigation on behalf of the estate were administration expenses for the purposes of *23 § 30-2485(b),[5] as were the attorney fees of a party other than the administrator.[6] Furthermore, in cases predating the current probate code, we held that guardian ad litem fees[7] and reimbursement for legal services provided by the administrator[8] were properly considered administration expenses.
Simplot's contention that its claim constituted an administration expense under § 30-2485(b) suffers from a fatal flaw. If the crop services Simplot provided are properly considered administration expenses, such ignores altogether § 30-2485(b)(l), which provides for the 4-month claim period for "[a] claim based on a contract with the personal representative.. . ."
[4] If this court were to adopt Simplot's reasoning  that the services in question should be considered administration expenses  then § 30-2585(b)(l) would be rendered virtually meaningless. A personal representative's duty is to act on behalf of the estate with the end goal of distributing and closing that estate.[9] In general, each and every contract entered by the personal representative is intended to assist the personal representative in his or her administration of the estate. Under Simplot's reasoning, all of those expenses could reasonably be construed as administration expenses, resulting in a situation in which it would rarely, if ever, be necessary for someone to actually file a claim with the probate court. We therefore reject Simplot's contention and hold that the claim in this case was not for administration expenses.
In support of this holding, we rely on our previous case law regarding administration expenses. As noted, this court has never defined administration expenses. This court has, however, indicated that certain claims were administrative in nature; many of those cases predate our current probate code. We conclude that the Legislature adopted the current probate code, including its unique exemption for administration expenses, with the knowledge of what expenses this court had held to be administration expenses. We decline to expand the list of expenses determined to be administrative to include the services provided by Simplot in this case, particularly when those services are so clearly "based on a contract with the personal representative" and thus fit neatly within § 30-2485(b)(l).
[5] Also supporting our conclusion are the purposes behind § 30-2485(b). We have stated that
[t]he purpose of the nonclaim statute, § 30-2485, is facilitation and expedition of proceedings for distribution of a decedent's estate, including an early appraisal of the respective rights of interested persons and prompt settlement of demands against the estate. As a result of the nonclaim statute, the probate court or the personal representative can readily ascertain the nature and extent of the decedent's debts, determine whether any sale of property is necessary to satisfy a decedent's debts, and project a probable time at which the decedent's *24 estate will be ready for distribution.[10]
Where the purpose behind § 30-2485(b) is to facilitate and expedite the distribution of a decedent's estate, defining administration expenses broadly, as Simplot would essentially have us do, would not forward this goal.
We also note that we have examined both the cases and regulations to which Simplot directs us and find them all distinguishable and inapplicable. In Perez v. Gil's Estate et al,[11] and Evans v. Carroll,[12] the administrators of the estate in each case wished to recover expenses incurred while continuing decedent's business following decedent's death; the court in each case concluded that the expenses in question were expenses of administration. However, there is no indication that the court in either case was presented with the statutory distinction that we have here: namely, the distinction made between "administration expenses" and "claims based upon a contract with the personal representative."
We also find Simplot's argument based upon Internal Revenue Code regulations unpersuasive. The regulations in question discuss expenses which are deductible from a decedent's gross estate and define administration fees as executor's commissions, attorney fees, and miscellaneous administration expenses.[13] Miscellaneous administration expenses are defined in this context to include those "[e]xpenses necessarily incurred in preserving . . . the estate," including "the cost of . . . maintaining property of the estate."[14]
[6] We, of course, agree that under the regulations, the cost of maintaining the property of an estate could, in certain circumstances, be properly considered a miscellaneous administration expense for the purposes of the Internal Revenue Code. We conclude, however, that such is of no import to our analysis of whether the services in question are "administration expenses" under the Nebraska Probate Code.
[7] We also reject Simplot's argument that the estate is estopped from now arguing that the expenses in question were not "administration expenses" when the estate referred to the expenses as such throughout the administration of the estate. We conclude that the terminology the estate employed in characterizing the expenses in question is of no consequence, particularly as it does not appear the nature of the expenses was at issue at the time the statements and filings were made by the estate.
We reject Simplot's contention that its claim was for administration expenses. Such a conclusion is supported by our prior case law on administration expenses in general and also by the purposes behind § 30-2485(b). As such, Simplot's first assignment of error is without merit. Because the expenses in question were not administrative, Simplot was required under §§ 30-2485(b)(l) and 30-2486 to file a claim with the probate code within 4 months. We discuss below whether Simplot filed such a claim.

Simplot's Demand for Notice Did Not Comply With § 30-2486(1).
[8] Having concluded the district court was correct in finding the services provided *25 by Simplot did not qualify as administration expenses, we are next presented with Simplot's second assignment of error. In particular, Simplot argues that its June 10, 2003, "Demand for Notice" qualified as a claim under § 30-2486(1). That section provides:
The claimant may file a written statement of the claim, in the form prescribed by rule, with the clerk of the court. The claim is deemed presented on the filing of the claim with the court. If a claim is not yet due, the date when it will become due shall be stated. If the claim is contingent or unliquidated, the nature of the uncertainty shall be stated. If the claim is secured, the security shall be described. Failure to describe correctly the security, the nature of any uncertainty, and the due date of a claim not yet due does not invalidate the presentation made.
Simplot's "Demand for Notice" provided that
[p]ursuant to Nebraska Probate Code § 30-2413, the undersigned hereby demands mailed notice pursuant to Nebraska Probate Code § 30-2220(a)(l) of any of the following orders or filings pertaining to the estate of the above deceased: . . . Inventory or any supplementary inventory [and a]ll other filings made by the Personal Representative or his attorney in this matter.
The notice further stated that "[Simplot] has a financial interest in the estate of the deceased and holds an outstanding claim." Simplot claims this demand was sufficient because § 30-2486 provides that the "[f]ailure to describe correctly the security, the nature of any uncertainty, and the due date . . . does not invalidate the presentation made."
[9] In re Estate of Feuerhelm[15] is instructive with respect to whether Simplot's "Demand for Notice" was sufficient as a statement of claim under § 30-2486(1). In that case, we held the purported claim against the estate was filed by the wrong entity, but also noted the claim was further deficient:
Although the language of [the] claim did alert the personal representative to the possibility of a claim by the trust, [the] claim did not contain a demand . . . upon the estate for satisfaction of any obligation. Mere notice to a representative of an estate regarding a possible demand or claim against the estate does not constitute presenting or filing a claim under § 30-2486. If notice were accorded the stature of a claim, the resultant state of flux and uncertainty would frustrate and avoid the purpose and objectives of the nonclaim statute.[16]
We conclude the "Demand for Notice" filed by Simplot was at most "notice to a representative of an estate regarding a possible demand or claim against the estate."[17] Simplot's "Demand" requested notice of any filings or orders in the estate and indicated, without providing any basis for the claim or amount due, that "[Simplot] has a financial interest in the estate of the deceased and holds an outstanding claim."
Moreover, we note this "Demand" referenced not § 30-2486(1), but Neb.Rev.Stat. § 30-2413 (Reissue 1995), which provides that interested parties can request notice *26 from the court of any order or filings pertaining to an estate. Lending further support to the conclusion that Simplot had not intended this as a claim is the fact that Simplot had, on July 16, 1999, filed a "Statement of Claim" with the estate in connection with services provided to Edward prior to his death, which services were unrelated to this case. That "Statement of Claim" provided a description of the claim, a due date, and the name and address of the claimant or authorized party.
The "Demand for Notice" filed on June 10, 2003, did not qualify as a statement of claim under § 30-2486(1). The record reveals no other filings which might otherwise qualify as a statement of claim filed with respect to amounts owed to Simplot. Simplot's second assignment of error is without merit.

Simplot's Filing of Suit Did Not Qualify as Claim Under § 30-2486(2).
[10] Having concluded that Simplot's "Demand for Notice" was insufficient as a claim under § 30-2486(1), we must next determine whether the filing of suit against the estate in the Box Butte County District Court was sufficient as a claim under § 30-2486(2). Such filing may qualify as a claim so long as "the commencement of the proceeding . . . occur[ed] within the time limited for presenting the claim,"[18] which under these facts was "within four months after performance by the personal representative is due."[19]
The operative question presented, then, is when "performance by the personal representative [was] due" in this case. Simplot contends that because it charged a finance charge on unpaid amounts, the account was an open one and "there was no dedicated time at which performance from the Personal Representative was due, and the limitations period set forth in the Probate Code has not run."[20]
[11, 12] We have noted that with respect to open accounts, "`"[a]n action on account or open account is appropriate where the parties have conducted a series of transactions for which a balance remains."'"[21]
Openness is indicated when further dealings between the parties are contemplated and when some term or terms of the contract are left open and undetermined.. . . The critical factor in deciding whether an account is open is whether the terms of payment are specified by the agreement or are left open and undetermined.[22]
It is clear that the estate's account with Simplot was an open account. The record in this case clearly shows that the parties "conducted a series of transactions for which a balance remains" and that the terms of payment between the estate and Simplot were left open and undetermined.
[13, 14] While Simplot may be correct that the account between it and the estate was open, such fact is not dispositive. In Sodoro, Daly v. Kramer,[23] a law firm was attempting to recover unpaid funds from a former client. The last charge on the client's account was a fee transaction dated April 4, 1997, for the preparation of correspondence to the client regarding oral argument. *27 The final transaction in the account, however, was a credit for the return on an appeal bond dated June 19. The firm did not file suit against the client until June 7, 2001. We held that the suit was barred by the statute of limitations.
It is well established that in an action on an open account, where the dealing between the parties was continuous, each succeeding item is applied to the true balance, and the latest item of the account removes prior items from the operation of the statute of limitations.. . . However, not every entry in an account is an "item" that restarts the statute of limitations.[24]
We noted that while part payment may remove the bar to recovery imposed by the statute of limitations, the credit for the return of the appeal bond did not qualify as part payment. We reasoned that the purpose behind removing the bar in certain circumstances was that part payment acted as recognition and acknowledgment of the entire debt; reasoning which did not apply in the case of a credit where there was no affirmative action by the client.
We find the reasoning from Sodoro, Daly equally applicable here. Further contracting for and receipt of services requires an affirmative action by a debtor and would likely be seen as recognition and acknowledgment of the entire debt. However, simply being charged a finance charge on amounts already owed requires no affirmative action by a debtor. As such, it should not be treated as a debtor's recognition and/or acknowledgment of a debt sufficient to toll the applicable statute of limitations.
Adopting such a position  wherein simply charging a finance charge or interest could keep the statute of limitations from running  would undermine the concept of a statute of limitations. If this were all that was necessary to keep a limitations period from running for an action on account, then accounts could remain unpaid for years with little or no incentive for creditors to attempt to recover the amounts due.
The record in this case shows the estate was billed for services provided to it on February 26, 2003, with a due date of March 20, and again on March 26, with a due date of April 20. Under §§ 30-2485 and 30-2486(2), suit had to be filed within 4 months of the date the underlying obligation was due. Simplot acknowledges that suit was not filed until March 25, 2004, approximately 1 year after the estate was first billed and well outside the 4 months permitted under § 30-2485. It is apparent that Simplot's suit does not qualify as a claim under § 30-2486(2). Simplot's third assignment of error is without merit.

Simplot Is Not Entitled to Equitable Relief.
[15] Finally, Simplot argues that even if it was found to have not filed a claim, "the Estate should be estopped from asserting the statute of limitations as a defense to Simplot's claim."[25] The basis for this contention is the alleged deception perpetrated against it when Simplot's local branch manager failed to invoice the estate for services provided by Simplot.
[16, 17] The elements of equitable estoppel are, as to the party estopped: (1) conduct which amounts to a false representation or concealment of material facts, or at least which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; *28 (2) the intention, or at least the expectation, that such conduct shall be acted upon by, or influence, the other party or other persons; and (3) knowledge, actual or constructive, of the real facts. As to the other party, the elements are: (1) lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) reliance, in good faith, upon the conduct or statements of the party to be estopped; and (3) action or inaction based thereon of such a character as to change the position or status of the party claiming the estoppel, to his or her injury, detriment, or prejudice.[26]
Assuming the doctrine of equitable estoppel is available in actions such as this,[27] we conclude that Simplot has not shown the estate should be estopped from arguing the application of § 30-2485.
Simplot argues that James and Simplot's local branch manager acted to conceal from Simplot the fact that Simplot was providing services to the estate without invoicing those services. What Simplot fails to show, though, is how it changed its position as a result of this alleged concealment. While it is true that the estate was not initially invoiced for the services, the manager's actions were eventually discovered and in February and March 2003, the services were invoiced. Under § 30-2485, a claim or suit should have been filed within 4 months of this date. Simplot did not file such a claim until 1 year later, nor has Simplot provided any reason why timely filing was not possible.
We further note that not only has Simplot failed to show that it changed its position in reliance on the alleged concealment, it likely would not be able to show the necessary "lack of knowledge . . . as to the facts in question" in order to be entitled to an estoppel defense. This is so because the manager, a Simplot employee, was involved in the alleged concealment, and his knowledge would likely be imputed to Simplot.[28]
Simplot's final assignment of error is without merit.

CONCLUSION
[18] The crop services for which Simplot seeks payment are not "administration expenses" under § 30-2485. As such, it was necessary that Simplot file either a claim or a lawsuit within 4 months from when the sums were due. Since Simplot failed to do either, it is barred from recovering any amounts due. The district court did not err in dismissing Simplot's claim.
AFFIRMED.
NOTES
[1] Jones v. Shelter Mut. Ins. Cos., 274 Neb. 186, 738 N.W.2d 840 (2007).
[2] Hornig v. Martel Lift Systems, 258 Neb. 764, 606 N.W.2d 764 (2000).
[3] § 30-2485(b).
[4] Compare Unif. Probate Code § 3-803, 8 U.L.A. 41 (Cum.Supp.2007).
[5] In re Estate of Reimer, 229 Neb. 406, 427 N.W.2d 293 (1988).
[6] Roberts v. Snow Redfern Memorial Foundation, 196 Neb. 139, 242 N.W.2d 612 (1976).
[7] Hauschild v. Hauschild, 176 Neb. 319, 126 N.W.2d 192 (1964).
[8] In re Estate of Wilson, 83 Neb. 252, 119 N.W. 522 (1909).
[9] See, generally. Neb.Rev.Stat. §§ 30-2462 to 30-2482 (Reissue 1995 & Cum.Supp.2006).
[10] In re Estate of Feuerhelm, 215 Neb. 872, 874-75, 341 N.W.2d 342, 344 (1983).
[11] Perez v. Gil's Estate et al, 29 N.M. 313, 222 P. 907 (1924).
[12] Evans v. Carroll, 167 Ga. 68, 144 S.E. 912 (1928).
[13] 26 C.F.R. § 20.2053-3(a) (2007).
[14] § 20.2053-3(d)(l) at 362.
[15] In re Estate of Feuerhelm, supra note 10.
[16] Id. at 875, 341 N.W.2d at 345. See, also, J.J. Schaefer Livestock Hauling v. Gretna St. Bank, 229 Neb. 580, 428 N.W.2d 185 (1988) (citing with approval language in In re Estate of Feuerhelm, supra note 10, noting that notice should not be accorded status of claim).
[17] See In re Estate of Feuerhelm, supra note 10, 215 Neb. at 875, 341 N.W.2d at 345.
[18] § 30-2486(2).
[19] § 30-2485(b)(1).
[20] Brief for appellant at 17.
[21] Sodoro, Daly v. Kramer, 267 Neb. 970, 975, 679 N.W.2d 213, 219 (2004) (quoting Pipe & Piling Supplies v. Betterman & Katelman, 8 Neb.App. 475, 596 N.W.2d 24(1999)).
[22] Id. at 976, 679 N.W.2d at 219 (citation omitted).
[23] Sodoro, Daly, supra note 21.
[24] Id. at 976-77. 679 N.W.2d at 220.
[25] Brief for appellant at 19.
[26] Mogensen v. Mogensen, 273 Neb. 208, 729 N.W.2d 44 (2007).
[27] See In re Estate of Masopust, 232 Neb. 936, 443 N.W.2d 274 (1989).
[28] See, e.g., Nichols v. Ach, 233 Neb. 634, 447 N.W.2d 220 (1989), disapproved on other grounds, Anderson v. Service Merchandise Co., 240 Neb. 873, 485 N.W.2d 170(1992).