MARY R. PHIFER, APPELLEE, V. ESTATE OF WILLIAM PHIFER, APPELLANT.

FILED JUNE 24, 1924.   No. 22850.

1. **Limitation of Actions:** CONTRACT FOR SERVICES. A daughter agreed to render services for her parents, in consideration of $10 a week to be paid by her father. No time was named for the termination of the contract, nor for payment. The contract was terminated by the death of the parents, many years later, at which time the daughter had received no part of the agreed wage. *Held*, this being a continuing contract, the statute of limitations did not commence to run until its termination.

2. **Insane Persons:** TERMINATION OF CONTRACTS. Where a father has entered into a valid contract with his daughter, providing for his care and the supervision of his household by her, a sub-

sequent appointment of a guardian for him does not impair or terminate the contract.

3. **Executors and Administrators: JUDGMENT FOR SERVICES.** Evidence examined, discussed in the opinion, and *held* that the judgment is amply supported thereby.

APPEAL from the district court for Otoe county: JAMES T. BEGLEY, JUDGE. *Affirmed.*

W. F. Moran, for appellant.

D. W. Livingston and E. F. Warren, contra.

Heard before MORRISSEY, C. J., DAY, GOOD and THOMPSON, JJ., and BLACKLEDGE, District Judge.

THOMPSON, J.

Plaintiff, an adult daughter, filed a claim in the county court of Otoe county against her father's estate, defendant herein, for $4,000, being $10 a week from November, 1910, to March 24, 1919, which she alleges is due her on an unwritten contract between them entered into before the services were rendered, she agreeing, in consideration of his promise to pay, to do the housework and to nurse and care 'for her aged parents, which she did up and until their death. The administrator objected to allowance of her claim, for the reason that the estate did not owe the debt; that whatever services she rendered she rendered as a member of the family; that the greater part of the claim is barred by the statute of limitations. These allegations were followed by a general denial. Case tried to county court, finding and judgment for plaintiff. Administrator appealed, tried in district court, on same pleadings, to jury, verdict and judgment for amount claimed. Administrator appeals.

The defendant for reversal relies on the following: That the verdict is not supported by the evidence; that a guardian was appointed for the father on the 20th day of May, 1913, and by reason thereof the contract terminated; that the claim is barred by the statute of limitations.

Taking these questions in their order, we find from the

evidence that prior to the date of the alleged contract the daughter had made a homestead entry on 160 acres of government land in Custer county and had lived thereon for several years; that her father and mother and an aunt lived in Otoe county; that her parents were each 77 years of age; that the aunt died, and plaintiff, who was then about 45 years of age, returned to her parents' home to attend the funeral; that the father was the owner of property of about the value of $12,000; that both parents were in feeble health, or at least were in need of some one to assist them, especially with the household duties, and that there was no other child situated so as to be able to render such care, and this daughter being unmarried, and either had or was about to prove up on her homestead, the father offered to pay the daughter, if she would return to his home and take care of them, $10 a week; that the daughter accepted the proposition, went to her homestead, and remained there until in November, 1910, when she returned to the home of her father, and took charge of her parents and cared for them and their household from that time until the father died March 24, 1919, the mother having passed on April, 1917. The first demand for payment was the filing of this claim. The evidence further shows a guardian was appointed as contended by the defendant, who entered upon the discharge of his duties and looked after the rentals, paying the taxes and paying over to the daughter a monthly allowance ordered by the court to be used by her in paying for the food, clothing, etc., for the father and mother. The guardian did not take charge of the person of the ward. The father and mother were left in the care of the daughter at his home after the guardian was appointed, the same as before. A brother, who was present at the time the contract was made, remained as a part of the father's family until the father died, and he testified in plaintiff's behalf at the trial. Plaintiff had two other brothers, neither of whom, so far as the evidence shows, objected to what was done, nor do they now object to the payment. The daughter's services were part of the parents' necessaries, and were so recognized by the father; also by the county

court, wherein it ordered the money set aside by the guardian to be paid over to the daughter, to be expended by her as in her judgment the needs of the parents demanded for fuel, food and clothing. This daughter was the burden bearer, the parents the recipients of her care and toil. As those interested construed this family agreement, in fact, in law, as well as in equity, it should remain and be enforced. Thus, it will be seen that all interested parties, all who had to do with the contract, and with the properties since the agreement was made, have interpreted it to be a contract providing for continuous service, without any fixed time of payment, or termination. As we view the law applicable to the proved facts, each of the contentions relied upon by the defendant for reversal must be, and is hereby, found against him. The verdict is sustained by the great preponderence of the evidence.

The contract is one without any definite time of payment, as well as without any definite time of termination, hence it is a continuing contract and the statute of limitations did not commence to run until on the father's death, to wit, March 24, 1919. Hence, the claim that no part thereof was barred by the statute of limitations. *Ah How v. Furth,* 13 Wash. 550; *Purviance v. Purviance,* 14 Ind. App. 269; *Whitehead v. Rhea,* 168 S. W. (Tex. Civ. App.) 460; *Clark v. Gruber,* 74 W. Va. 533; *In re Estate of Oldfield,* 158 Ia. 98; *Sullenbarger v. Ahrens,* 168 Ia. 288; *Story v. Story,* 1 Ind. App. 284; *Grave v. Pemberton,* 3 Ind. App. 71; *Knight v. Knight,* 6 Ind. App. 268.

The appointment of the guardian did not terminate the contract. "Where the relation of master and servant exists by reason of a mutual contract of hiring and service, the contract is not terminated by subsequent insanity of the master, as the relation in such case is more than the bare relation of principal and agent." *Sands v. Potter,* 165 Ill. 397. In this Illinois case the master was found to be insane, taken to the asylum, and his wife appointed conservator, after the service contract was made. In the instant case the father's ability to make the contract is not and never was questioned. The law as announced in the *Sands*

case is approved. Other cases supporting the position here taken are: *Sims v. McLure,* 8 *Rich. Eq.* (S. Car.) 286, 70 Am. Dec. 196; *Baxter v. Earl of Portsmouth,* 5 Barn. & Cr. (Eng.) *170; *Dodds v. Wilson,* 3 Brev. (S. Car.) 389.

Other assignments of alleged error have been presented, which we have examined, but in view of our decision we do not find it necessary to discuss.

The judgment of the district court is right, and is in all things

AFFIRMED.

Note—See Limitations of Actions, 25 Cyc. p. 1104—Insane Persons, 32 C. J. p. 731, sec. 502; Executors and Administrators, 24 C. J. p. 867, sec. 2184.