Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
12/31/2021 01:07 AM CST

In re Estate of Charles E. Lakin, deceased.
Charles E. Lakin Foundation, Inc., appellant, v.
Thomas Pribil and William Kilzer, Copersonal
Representatives of the Estate of
Charles E. Lakin, appellees.

In re Trust of Charles E. Lakin, deceased.
Charles E. Lakin Foundation, Inc. appellant, v.
Thomas Pribil and William Kilzer, Cotrustees
of the Charles E. Lakin Revocable
Trust, et al., appellees.

Filed October 8, 2021.    Nos. S-20-093, S-20-094.

1. **Summary Judgment: Appeal and Error.** An appellate court affirms a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law.

2. \_\_\_\_: \_\_\_\_. In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted, and gives that party the benefit of all reasonable inferences deducible from the evidence.

3. **Summary Judgment: Jurisdiction: Appeal and Error.** When reviewing cross-motions for summary judgment, an appellate court acquires jurisdiction over both motions and may determine the controversy that is the subject of those motions.

4. **Appeal and Error.** An appellate court may specify the issues as to which questions of fact remain and direct further proceedings as the court deems necessary.

5. **Jurisdiction: Appeal and Error.** It is the power and duty of an appellate court to determine whether it has jurisdiction over the matter before it, irrespective of whether the issue is raised by the parties.

6. **Jurisdiction: Final Orders: Appeal and Error.** Generally, for an appellate court to acquire jurisdiction of an appeal, there must be a final order entered by the court from which the appeal is taken.

7. **Final Orders.** When a trial court clearly intends its order to serve as a final adjudication of the rights and liabilities of the parties, the order's silence on requests for relief can be construed as a denial of those requests.

8. **Final Orders: Appeal and Error.** Pursuant to Neb. Rev. Stat. § 25-1902(b) (Cum. Supp. 2020), an order affecting a substantial right made during a special proceeding is a final order which may be vacated, modified, or reversed.

9. **Decedents' Estates.** A proceeding under the Nebraska Probate Code is a special proceeding.

10. **Decedents' Estates: Final Orders: Appeal and Error.** A proceeding under Neb. Rev. Stat. § 30-2454 (Reissue 2016) to remove a personal representative for cause is a special proceeding and can be a final, appealable order even though it may not terminate the action or constitute a final disposition of the case.

11. **Final Orders: Appeal and Error.** A substantial right is involved if an order affects the subject matter of the litigation, such as diminishing a claim or defense that was available to an appellant before the order from which an appeal is taken.

12. **Decedents' Estates: Final Orders: Appeal and Error.** An order denying an application for the appointment of a special administrator in a probate dispute is a final, appealable order because the denial of such cannot be effectively vindicated on appeal from the judgment in which the probate estate would be finally established.

13. **Statutes: Appeal and Error.** Statutory language is to be given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous.

14. **Judgments: Appeal and Error.** The plain language of Neb. Rev. Stat. § 25-1912(1) (Cum. Supp. 2020) provides that a notice of appeal must be filed within 30 days after the entry of the judgment, signed by either the appellant or appellant's attorney, and that the appellant must pay the required docket fee.

15. **Actions: Promissory Notes: Reformation: Equity: Courts.** While an action on a promissory note is an action at law, reformation sounds in equity. And a court of equity will look to the substance of a transaction, rather than give heed to the mere form it may assume.

16. **Promissory Notes: Words and Phrases.** A promissory note is an unconditional written promise, signed by the maker, to pay absolutely

and in any event a certain sum of money either to, or to the order of, the bearer or a designated person.

17. **Wages: Words and Phrases.** Deferred compensation is defined as compensation which is earned in exchange for services rendered.

18. **Employment Contracts: Limitations of Actions.** Parties to a contract of employment may agree that compensation for the services to be furnished shall be deferred until the completion of the work, but in such cases, the statute of limitations does not begin to run until the work has been fully performed.

19. **Decedents' Estates: Limitations of Actions: Notice: Claims.** Under Neb. Rev. Stat. § 30-2483 (Reissue 2016) of the Nebraska Probate Code, the clerk of the county court must give notice to creditors of an estate to present their claims within 2 months after the date of the first publication of the notice or be forever barred.

20. **Decedents' Estates: Limitations of Actions: Waiver.** Only with the consent of all successors may a personal representative waive any defense of limitations available to the estate.

21. **Decedents' Estates: Limitations of Actions: Claims: Waiver.** If the defense of limitations is not waived by the personal representative, no claim against the estate which was barred by any statute of limitations at the time of the decedent's death shall be allowed or paid.

22. **Decedents' Estates: Employment Contracts.** Recovery is permitted for services rendered to a decedent during his or her lifetime if evidence shows that services were rendered under an express contract, either written or oral, to pay for them.

23. **Decedents' Estates: Notice: Claims.** Mere notice to a representative of an estate regarding a possible demand or claim against the estate does not constitute presenting or filing a claim under Neb. Rev. Stat. § 30-2486 (Reissue 2016).

24. **Decedents' Estates: Claims: Limitations of Actions.** All claims against a decedent's estate which arose before the death of the decedent, if not barred by another statute of limitations, are barred against the estate, the personal representative, and the heirs and devisees of the decedent, unless presented according to Neb. Rev. Stat. § 30-2485(a) (Reissue 2016).

25. **Decedents' Estates: Claims.** The purpose of Neb. Rev. Stat. § 30-2485 (Reissue 2016) is to facilitate and expedite proceedings for distribution of a decedent's estate, including an early appraisal of the respective rights of interested persons and the prompt settlement of demands against the estate.

26. ____: ____. As a result of the nonclaim statute, the probate court or the personal representative can readily ascertain the nature and extent of

the decedent's debts, determine whether any sale of property is necessary to satisfy a decedent's debts, and project a probable time at which the decedent's estate will be ready for distribution.

27. **Decedents' Estates: Claims: Limitations of Actions.** If presentation of a claim against a decedent's estate is required, a claim that is not duly and timely presented generally is barred, unless the delay is excused or relief is granted, and a claim that is not duly presented does not constitute a charge against, or a lien on, the estate.

28. **Malpractice.** Whether a breach of fiduciary duty has occurred is a question of fact.

29. **Summary Judgment.** On a motion for summary judgment, the question is not how a factual issue is to be decided but whether any real issue of material fact exists.

30. ____. Entry of summary judgment is appropriate only if there are no genuine issues of fact and if, as a consequence, one party is entitled to judgment as a matter of law.

31. **Summary Judgment: Parties.** The fact that both parties simultaneously are arguing that there is no genuine dispute of fact does not establish that a trial is unnecessary.

32. **Pleadings: Evidence: Waiver: Words and Phrases.** A judicial admission, as a formal act done in the course of judicial proceedings, is a substitute for evidence and thereby waives and dispenses with the production of evidence by conceding for the purpose of litigation that the proposition of fact alleged by an opponent is true.

33. **Pleadings: Intent.** Judicial admissions must be deliberate, clear, and unequivocal, and they do not extend beyond the intent of the admission as disclosed by its context.

34. **Pleadings.** Formal acts that may operate as judicial admissions include statements made in pleadings.

Appeal from the County Court for Douglas County: Stephanie S. Shearer, Judge. Reversed and remanded for further proceedings.

Zachary W. Lutz-Priefert, Frederick D. Stehlik, William J. Lindsay, Jr., and John A. Svoboda, of Gross & Welch, P.C., L.L.O., for appellant.

Edward D. Hotz, Amanda M. Forker, and Benjamin C. Deaver, of Pansing, Hogan, Ernst & Bachman, L.L.P., for defendants-appellees Thomas L. Pribil and William A. Kilzer.

Trenten P. Bausch and Megan S. Wright, of Cline, Williams, Wright, Johnson & Oldfather, L.L.P., for appellee Thomas L. Pribil in his individual capacity.

Cathy S. Trent-Vilim and Brian J. Brislen, of Lamson, Dugan & Murray, L.L.P., for appellee William A. Kilzer, an individual.

Heavican, C.J., Cassel, Stacy, Funke, and Freudenberg, JJ.

Funke, J.

The Charles E. Lakin Foundation, Inc., appeals from the granting of summary judgment in favor of Thomas Pribil and William Kilzer, appellees, who are the copersonal representatives of the estate of Charles E. Lakin and the cotrustees of the Charles E. Lakin Revocable Trust. The foundation contends appellees improperly paid Pribil approximately $7 million after Lakin's death. On appeal, we conclude that because Pribil failed to file a claim for the debt with the estate, appellees' payment of the debt was not authorized. Based upon the summary judgment record before this court, we conclude that a dispute of material fact exists regarding the foundation's fiduciary duty claims against appellees as copersonal representatives and cotrustees. Therefore, we reverse, and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

### 1. Parties

Lakin amassed an estate worth approximately $170 million at the time of his death. Lakin's businesses included ownership of numerous farms in Iowa and Arizona. Lakin operated his business as Lakin Enterprises, which was not incorporated or established as a limited liability company. In 1972, Pribil began working for Lakin.

In his "Last Will and Testament," Lakin nominated Pribil and Kilzer, Lakin's grandson, to serve as copersonal

representatives of his estate. Lakin executed a trust, appointed Pribil and Kilzer to serve as cotrustees of the trust, and made the trust the primary beneficiary of his will.

Lakin's son, Charles E. Lakin III (Chuck), worked for him from 1977 until 2014. Initially, Chuck was a copersonal representative and cotrustee of Lakin's estate and trust. In 2016, Lakin changed his will and trust agreement to remove Chuck from both representative positions and nominated Kilzer in his place.

## 2. Trust Agreement

Lakin named the foundation as the primary beneficiary of the trust. The trust authorized, but did not direct, the trustee to "pay or satisfy any other obligations of the Grantor's estate (including without limitation debts of the Grantor and expenses of administration of the Grantor's estate) as the Trustee in its sole discretion may deem appropriate." Further, the trust agreement gave the trustee the power to dispose of any securities or property and to make payments and allocate principal or income or any property received as a result thereof.

## 3. Promissory Note

In 1984, Lakin wanted to increase Pribil's salary, but did not want Chuck to know. As a result, Lakin made a confidential agreement to pay Pribil deferred wages in the future. Lakin and Pribil worked together to prepare a document entitled "Promissory Note" (note) setting forth their agreed-upon terms. The note reads:

> ON DEMAND, FOR VALUE RECEIVED, [Lakin] promises to pay to [Pribil], or order, the sum of ONE MILLION TWO HUNDRED THOUSAND DOLLARS ($1,200,000.00), plus an additional amount of FIFTY THOUSAND DOLLARS ($50,000.00) on each anniversary date of Pribil's continuous employment by Lakin, together with interest, from date of demand at the rate of twelve percent (12%) per annum.

The initial principal amount of this note represents additional compensation to Pribil from Lakin for the first twelve (12) years of Pribil's employment with Lakin.

Demand for payment on this Note by Pribil cannot be made by Pribil until Pribil reaches the age of sixty (60) or the demise of Lakin, whichever date occurs first. This date shall then be the due date of this note.

The due date of this note, it is anticipated by Lakin, will be the date of the demise of Lakin and Lakin hereby directs the estate of Lakin to pay out to Pribil all monies, due under this Note, in whole or in part, from time to time, as specifically directed by Pribil within ten (10) days after receipt of notice, from Pribil.

In addition to the payment to Pribil of all monies due under this Note, Lakin agrees and directs that the principal part of this Note shall be paid to Pribil as a tax free gift to Pribil or with all federal and state income taxes paid in full so that the entire principal part of this note shall be net "tax free" monies to Pribil.

In addition to this note, this date, Lakin and Pribil have entered into an Incentive Compensation Agreement which is known to parties other than Lakin and Pribil; however, for family reasons of Lakin, Lakin has requested of Pribil, and Pribil agrees, to keep this note confidential between Lakin and Pribil. The only other party that has knowledge of this note is the party that typed it for Lakin and this party has agreed to Lakin to also keep it confidential. To Lakin's knowledge, Pribil does not know who this party is.

With this note it is Lakin's intent that Pribil shall have and for Pribil to know that Pribil will have forever financial security. Lakin feels this is justly due to Pribil for Pribil's dedication to Lakin and superb performance in Lakin's behalf and to provide to Pribil the additional incentive to remain in the continuous employ of Lakin.

The validity of the written note is not contested. However, an alleged oral modification is contested. According to Pribil, he and Lakin orally agreed to reduce the interest rate to 6 percent annually and agreed that interest would accrue on Pribil's 60th birthday. Pribil claimed that in order to keep the agreement confidential, the note would become due upon Lakin's death. Pribil testified that interest began when he turned 60 years old in March 2007, even though he did not make a demand at that time. Pribil opined that the note was a compensation agreement for deferred wages due to him for his work with Lakin Enterprises.

### 4. Probate Proceedings

Lakin died in March 2016. In April 2016, Pribil and Kilzer filed an application for informal probate of the will and informal appointment of a personal representative to administer Lakin's estate. In the application, Pribil and Kilzer stated that neither was indebted to the estate nor a creditor of the estate. During a deposition, Pribil was asked whether his statement from the application was accurate, to which he responded, "Outside of my wages, but I never — I never understood — I'm certainly not indebted, and I didn't consider myself a creditor, because wages is ongoing[.]" Pribil also characterized the debt as "an obligation of [Lakin]" and as "wages owing by the Estate."

Lakin's will, which was admitted into probate, provides, in part, "My Personal Representative shall pay all enforceable debts, unsatisfied charitable pledges, funeral expenses, costs of administration including ancillary administration, costs of safeguarding and delivering devises, and other proper charges against my estate as soon as practicable."

### 5. Payment

It is undisputed that Pribil did not file a claim in the estate proceedings. However, in April 2016, Pribil and Kilzer began discussions with their legal counsel regarding payment of the debt to Pribil. In June 2016, Pribil asked Lakin's accountant

to calculate the debt. On September 26, with the consent of Kilzer but without approval from the court, Pribil paid himself $6,946,828.33 as payment due under the note, with $3,242,869.12 withheld for taxes, leaving a net payment of approximately $3.7 million. In order to make the full payment under the note, Pribil and Kilzer liquidated stocks held by the trust without a request to the court.

### 6. Petitions for Removal and Surcharge

In May 2018, the foundation filed a petition for suspension, removal, and surcharge of the personal representatives and for appointment of successor copersonal representatives or a special administrator. At the same time, the foundation filed a petition for suspension, removal, and surcharge of the trustees and for appointment of successor cotrustees or a special fiduciary. The foundation moved to compel distribution of assets from the estate to the foundation and filed similar motions in the trust case. Pribil and Kilzer objected to the motions and, subsequently, moved for summary judgment in each case. The foundation, in turn, moved for partial summary judgment in each case. The foundation later renewed its motions to compel distribution of assets. Pribil and Kilzer filed an objection in the probate case.

On June 26, 2018, in both cases, the court held a hearing on the foundation's petitions for suspension and removal and took the matter under advisement. At the next hearing, the court informed the parties that it had not yet ruled on the matter from the previous hearing, and it advised that it would not be able to proceed that day due to new information that had come to light during the discovery process.

At a December 6, 2018, hearing, the foundation offered into evidence in the probate case the amended petitions for suspension, removal, and surcharge of copersonal representatives and appointment of successor copersonal representatives or a special administrator. The foundation offered into evidence Pribil and Kilzer's answers in both cases. On December 20, the court held a hearing regarding the motion to compel

distribution of assets, and it later held a hearing on a motion to stay payment of attorney fees.

### 7. County Court's Order

On January 6, 2020, the county court entered a single order covering both cases. The court listed the motions that were pending to include (1) a motion for partial summary judgment filed by the foundation, (2) a motion for summary judgment filed by Pribil in his individual capacity, (3) a motion for summary judgment filed by Kilzer in his individual capacity, (4) a motion for summary judgment filed by Pribil and Kilzer in their representative capacities, (5) a motion to stay or set aside attorney fees, (6) the motion to compel distribution of assets, and (7) the renewed motion to compel distribution of assets.

The court granted summary judgment in favor of Pribil and Kilzer in their individual and representative capacities. In doing so, the court found that Pribil and Kilzer did not breach their fiduciary duties to the estate by paying the note or by delaying the administration of the estate. The court further found that Pribil and Kilzer did not breach their fiduciary duties to the trust by processing and disbursing the funds from the trust according to the terms of the note or by delaying the administration of the trust.

The court overruled the foundation's motion for partial summary judgment in both matters. The court overruled the foundation's motions to compel distribution and amended motions to compel distribution. However, the court's order did not dismiss the foundation's petitions, nor did it explicitly rule on the foundation's requests that Pribil and Kilzer be surcharged or be directed to provide an accounting.

### 8. Appeals

On February 4, 2020, the foundation filed two notices of appeal. The notice of appeal in the probate case identified the foundation as the appealing party and was signed by the foundation's attorney. The foundation filed a separate notice of

appeal in the trust case, signed by the same attorney, but incorrectly identified the trust as the appealing party. Over 2 months later, the foundation filed a motion to correctly identify the parties on appeal in the trust case, which the Nebraska Court of Appeals sustained. On our own motion, we moved the cases to our docket pursuant to our authority to regulate the dockets of the appellate courts.

## II. ASSIGNMENTS OF ERROR

The foundation assigns, restated and consolidated, that the county court erred in (1) finding that the note was a deferred compensation agreement; (2) finding that the note was not barred by the applicable statute of limitations; (3) finding that Lakin and Pribil orally modified the note; (4) finding that Pribil was not required to file a claim with the estate, and thus concluding that Pribil and Kilzer in their representative capacities were allowed to pay the amount due under the note; (5) concluding that Pribil had not judicially admitted his status as a creditor; (6) concluding that Pribil and Kilzer did not breach their fiduciary duties to the estate or to the trust; (7) not removing Pribil and Kilzer and appointing a successor personal representative and trustees; (8) not requiring Pribil, under Neb. Ct. R. § 6-1437 (rev. 2020), to obtain the court's permission to pay himself in excess of $250; and (9) concluding that Pribil and Kilzer were allowed to rely upon professional advice.

## III. STANDARD OF REVIEW

[1,2] An appellate court affirms a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law. In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted, and gives that

party the benefit of all reasonable inferences deducible from the evidence.[1]

[3,4] When reviewing cross-motions for summary judgment, an appellate court acquires jurisdiction over both motions and may determine the controversy that is the subject of those motions; an appellate court may also specify the issues as to which questions of fact remain and direct further proceedings as the court deems necessary.[2]

## IV. ANALYSIS

### 1. Jurisdictional Issues

#### (a) Final, Appealable Order

[5,6] It is the power and duty of an appellate court to determine whether it has jurisdiction over the matter before it, irrespective of whether the issue is raised by the parties.[3] Generally, for an appellate court to acquire jurisdiction of an appeal, there must be a final order entered by the court from which the appeal is taken.[4] Thus, as a threshold matter, we first address whether the county court's order granting summary judgment is a final order.

[7] The county court's order did not explicitly discuss the foundation's petition for suspension, removal of, and surcharge of personal representatives and for appointment of successor copersonal representatives or a special administrator. However, when a trial court clearly intends its order to serve as a final adjudication of the rights and liabilities of the parties, the order's silence on requests for relief can be construed as a denial of those requests.[5] Here, it is clear to us that the county court intended its order granting summary judgment

---

[1] *Sundermann v. Hy-Vee*, 306 Neb. 749, 947 N.W.2d 492 (2020).

[2] *Johnson v. Nelson*, 290 Neb. 703, 861 N.W.2d 705 (2015); *Chicago Lumber Co. of Omaha v. Selvera*, 282 Neb. 12, 809 N.W.2d 469 (2011).

[3] *In re Estate of McKillip*, 284 Neb. 367, 820 N.W.2d 868 (2012).

[4] *Id.*; *State v. Riensche*, 283 Neb. 820, 812 N.W.2d 293 (2012).

[5] See *In re Estate of Hedke*, 278 Neb. 727, 775 N.W.2d 13 (2009).

to serve as a final adjudication of the rights and liabilities of the parties.

The foundation asked the court for removal of appellees and for surcharge, based on the argument that appellees breached their fiduciary duties to the estate and the trust by paying Pribil's note and delaying distribution of the trust assets. In granting appellees' motions for summary judgment, the county court explicitly found that appellees did not breach their fiduciary duties owed to the estate or the trust. Additionally, the county court explicitly found that appellees properly paid Pribil's claim and did not delay distribution of the trust assets. As such, the county court considered the foundation's requests for affirmative relief and effectively, albeit implicitly, denied those requests. In this case, the court's order can be understood as a dismissal of the foundation's petitions, even if the order did not state so explicitly. We must next consider whether the order was final under Neb. Rev. Stat. § 25-1902(1)(b) (Cum. Supp. 2020).

[8-11] Under § 25-1902(1)(b), an order affecting a substantial right made during a special proceeding is a final order which may be vacated, modified, or reversed. This court has previously determined that a proceeding under the Nebraska Probate Code is a special proceeding.[6] More specifically, we have acknowledged that a proceeding under Neb. Rev. Stat. § 30-2454 (Reissue 2016) to remove a personal representative for cause is a special proceeding within the meaning of § 25-1902 and therefore can result in a final, appealable order even though it may not terminate the action or constitute a final disposition of the case.[7] Further, a substantial right is involved if an order affects the subject matter of the litigation, such as diminishing a claim or defense that was available to an appellant before the order from which an appeal is taken.[8]

---

[6] See *In re Estate of McKillip, supra* note 3.

[7] See *In re Estate of Seidler*, 241 Neb. 402, 490 N.W.2d 453 (1992).

[8] *Id.*

It is clear to us that the court's order disposed of the foundation's petitions and, therefore, affected a substantial right of the foundation. Moreover, a substantial right is affected when that right cannot be effectively vindicated in an appeal from another possible final judgment in the case.[9]

[12] In *In re Estate of Muncillo*,[10] we determined that an order denying an application for the appointment of a special administrator in a probate dispute was a final, appealable order, because the denial of such could not be effectively vindicated on appeal from the judgment in which the probate estate would be finally established, and that thus, the denial affected an essential legal right.[11] Here, just as in *In re Estate of Muncillo*, the dismissal of the foundation's petition seeking removal of appellees and the appointment of a special administrator cannot be effectively vindicated on appeal from any other potential final judgment or resolution of the case. The court's order affected an essential legal right of the foundation.[12] The county court's order operated as a final, appealable order.

### (b) Defect in Notice of Appeal

As explained above, the notice of appeal filed in the trust case misidentified the appealing party. Kilzer argues this is a fatal flaw that deprives this court of proper appellate jurisdiction.

In *Hearst-Argyle Prop. v. Entrex Comm. Servs.*,[13] we determined that a notice of appeal filed under the wrong docket number was not fatal to appellate jurisdiction. We recognized that the notice of appeal filed in that case correctly identified the parties and the order being appealed from and that no

---

[9] See *id.*

[10] *In re Estate of Muncillo*, 280 Neb. 669, 789 N.W.2d 37 (2010).

[11] *Id.*

[12] See, e.g., *Gillpatrick v. Sabatka-Rine*, 297 Neb. 880, 902 N.W.2d 115 (2017).

[13] *Hearst-Argyle Prop. v. Entrex Comm. Servs.*, 279 Neb. 468, 778 N.W.2d 465 (2010).

party was confused or misled by the notice. [14] Here, there is no claim that the defect in the notice of appeal confused or misled a party. In fact, in a stipulation, all parties acknowledged the pending appeal and sought to correct a different issue in the transcript. Any scrivener's error in one of the notices of appeal had no impact on the parties and does not warrant a dismissal of this appeal.

Kilzer argues that this case can be distinguished from *Hearst-Argyle Prop.* because under Neb. Rev. Stat. § 25-1912 (Cum. Supp. 2020), the identity of an appealing party is a statutory requirement. We disagree.

Neb. Rev. Stat. § 30-1601(1) (Cum. Supp. 2020) provides that "[i]n all matters arising under the Nebraska Probate Code . . . appeals may be taken to the Court of Appeals in the same manner as an appeal from district court to the Court of Appeals." Section 30-1601(2) provides that "[a]n appeal may be taken by any party and may also be taken by any person against whom the final judgment or final order may be made or who may be affected thereby." Section 25-1912(1) provides:

> The proceedings to obtain a reversal, vacation, or modification of judgments and decrees rendered or final orders made by the district court, including judgments and sentences upon convictions for felonies and misdemeanors, shall be by filing in the office of the clerk of the district court in which such judgment, decree, or final order was rendered, within thirty days after the entry of such judgment, decree, or final order, a notice of intention to prosecute such appeal signed by the appellant or appellants or his, her, or their attorney of record and, except as otherwise provided in sections 25-2301 to 25-2310 and 29-2306 and subsection (4) of section 48-638, by depositing with the clerk of the district court the docket fee required by section 33-103.

[13,14] It is well established that in general, statutory language is to be given its plain and ordinary meaning, and an

---

[14] *Id.*

appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous.[15] The plain language of § 25-1912(1) provides that a notice of appeal must be filed within 30 days after the entry of the judgment, signed by either the appellant or the appellant's attorney, and that the appellant must pay the required docket fee. Looking at the plain language of § 25-1912(1), there is no requirement that a notice of appeal must include the appellant's name. Therefore, we reject Kilzer's argument.

Because the notice of appeal in the trust case was timely filed, was filed under the correct docket, correctly identified the order being appealed from, and was signed by the foundation's counsel, we find the notice of appeal met all of the statutory requirements under § 25-1912.

We conclude that the court's order operated as a final, appealable order, that both notices of appeal met statutory requirements, and that this court has appellate jurisdiction over the probate case and the trust case.

## 2. Note

The central dispute in this matter involves the 1984 agreement between Lakin and Pribil styled as a promissory note. The parties disagree as to whether the agreement is a promissory note or a deferred compensation agreement. In its order, the county court characterized the note as a deferred compensation agreement.

[15,16] "While an action on a promissory note is an action at law, reformation sounds in equity. And a court of equity will look to the substance of a transaction, rather than give heed to the mere form it may assume."[16] A promissory note is "'[a]n unconditional written promise, signed by the maker, to pay

---

[15] *Ash Grove Cement Co. v. Nebraska Dept. of Rev.*, 306 Neb. 947, 947 N.W.2d 731 (2020); *Metropolitan Utilities Dist. v. Balka*, 252 Neb. 172, 560 N.W.2d 795 (1997).

[16] See *Marcovitz v. Rogers*, 276 Neb. 199, 205, 752 N.W.2d 605, 609-10 (2008).

absolutely and in any event a certain sum of money either to, or to the order of, the bearer or a designated person.'"[17]

[17,18] Generally, deferred compensation is defined as compensation which is earned in exchange for services rendered.[18] Parties to a contract of employment may agree that compensation for the services to be furnished shall be deferred until the completion of the work, but in such cases, the statute of limitations does not begin to run until the work has been fully performed.[19]

In this case, although the document bears the title "Promissory Note," the substance of the document clearly reflects Lakin's intention to provide Pribil with additional compensation for his services as an employee, as seen in a few key provisions. The second paragraph of the document provides, "The initial principal amount of this note represents additional compensation to Pribil from Lakin for the first twelve (12) years of Pribil's employment with Lakin." Additionally, the seventh paragraph of the document states:

> With this note it is Lakin's intent that Pribil shall have and for Pribil to know that Pribil will have forever financial security. Lakin feels this is justly due to Pribil for Pribil's dedication to Lakin and superb performance in Lakin's behalf and to provide to Pribil the additional incentive to remain in the continuous employ of Lakin.

This language demonstrates Lakin's intent to pay Pribil compensation earned in exchange for the services Pribil rendered as an employee.

Therefore, though the parties styled their written agreement as a promissory note, the county court did not err in characterizing the document as a deferred compensation agreement.

---

[17] *Id*. at 204, 752 N.W.2d at 609, quoting Black's Law Dictionary 1089 (8th ed. 2004).

[18] *Dooling v. Dooling*, 303 Neb. 494, 930 N.W.2d 481 (2019); *Livingston v. Metropolitan Util. Dist.*, 269 Neb. 301, 692 N.W.2d 475 (2005).

[19] *Weiss v. Weiss*, 179 Neb. 714, 140 N.W.2d 15 (1966).

### 3. Statute of Limitations

The foundation argues the note was unenforceable because the statute of limitations had run by the time the note was paid. Under Neb. Rev. Stat. § 25-205 (Reissue 2016), "an action upon a . . . contract, or promise in writing . . . can only be brought within five years." The foundation argues that under the note, demand for payment could not be made until the earlier of Pribil's 60th birthday, which occurred in 2007, or Lakin's death, which occurred in 2016. As a result, the foundation contends that the demand date should have occurred in 2007 and that since it did not, the statute of limitations expired in 2012.

However, as just discussed, we consider the written agreement to be a deferred compensation agreement. As we have previously held, under a deferred compensation agreement, the statute of limitations does not begin to run until the work has been fully performed.[20] The statute of limitations on the note did not commence to run until Pribil ceased to work for Lakin,[21] which occurred upon Lakin's death in March 2016. Here, the statute of limitations did not expire until March 2021 and, thus, did not bar payment under the note. The county court did not err in finding the note was not barred by the applicable statute of limitations.

### 4. Oral Modification

The foundation argues that the county court erred in finding that Lakin and Pribil orally modified the deferred compensation agreement. The foundation contends that because the parties reduced their agreement to writing, by operation of law, the agreement could not be orally modified. Appellees

---

[20] See *id.*

[21] See, *Sodoro, Daly v. Kramer*, 267 Neb. 970, 679 N.W.2d 213 (2004); *In re Estate of Baker*, 144 Neb. 797, 14 N.W.2d 585 (1944); *In re Estate of Skade*, 135 Neb. 712, 283 N.W. 851 (1939); *Phifer v. Estate of Phifer*, 112 Neb. 327, 199 N.W. 511 (1924).

counter that the terms of a written executory contract may be orally modified by the parties thereto at any time after its execution and before a breach has occurred, without any new consideration.

The terms of the original agreement indicated that Pribil could make demand for payment of the note after he turned 60 years of age. The agreement called for interest on the sums owed to Pribil to accrue at the rate of 12 percent per annum from the date of demand. In the trial court, appellees alleged that the agreement was orally modified to reduce the interest rate to 6 percent per annum and to fix the demand date as the date of Lakin's death.

On appeal, the parties seem to agree that the agreement was orally modified, insofar as both advocate for a 6-percent interest rate. Having considered the foundation's appeal, we conclude that the alleged oral amendment is irrelevant. As we explain in greater detail below, the debt was incurred during Lakin's life and was subject to the claims-barred statute applicable in estate proceedings. This assignment of error is without merit.

## 5. Claim

[19-21] Under Neb. Rev. Stat. § 30-2483 (Cum. Supp. 2020) of the Nebraska Probate Code, the clerk of the county court must give notice to creditors of an estate to present their claims within 2 months after the date of the first publication of the notice or be forever barred. Only with the consent of all successors may a personal representative waive any defense of limitations available to the estate.[22] If the defense of limitations is not waived by the personal representative, no claim against the estate which was barred by any statute of limitations at the time of the decedent's death shall be allowed or paid.[23]

---

[22] Neb. Rev. Stat. § 30-2484 (Reissue 2016).

[23] *Id.*

(a) Necessity of Claim

The parties disagree as to whether Pribil was required to file a claim in the estate proceeding before the debt could be paid. The foundation contends that the debt was incurred by Lakin during his lifetime and that therefore, a claim was required. Appellees contend that the amounts owed to Pribil were merely wages earned after Lakin's death or administrative expenses of the estate and that thus, no claim was required. The probate court agreed with appellees and ruled that since Pribil sought payment only after Lakin's death, no claim was needed.

Appellees rely upon Neb. Rev. Stat. §§ 30-2476 and 30-2487 (Reissue 2016) to support their argument. Section 30-2476(3) authorizes personal representatives to perform the decedent's contracts that continue as obligations of the estate. Additionally, § 30-2476 specifically provides that the personal representatives, "acting reasonably for the benefit of the interested persons, may properly . . . (24) continue any unincorporated business or venture in which the decedent was engaged at the time of death." Under § 30-2487(a), when the assets of the estate are insufficient to pay all claims in full, costs and expenses of administration of an estate have the first priority for payment. Costs and expenses of administering an estate include "expenses incurred in taking possession or control of estate assets and the management, protection, and preservation of the estate assets, expenses related to the sale of estate assets, and expenses in the day-to-day operation and continuation of business interests for the benefit of the estate."[24]

Here, Lakin owed Pribil $1.2 million as of November 5, 1984, as additional compensation for the first 12 years of Pribil's employment. Additionally, the note indicated that Lakin would owe an additional $50,000 each year of Pribil's continued employment thereafter; that Pribil could demand payment after he reached 60 years of age or at the time of Lakin's death, whichever occurred first; and that Lakin's estate was

---

[24] § 30-2487(c).

directed to pay Pribil within 10 days of Pribil's demand. The note further indicated that the note would become due upon either Pribil's 60th birthday or Lakin's demise.

[22] The record shows that the sums paid to Pribil were for periods of time Pribil worked for Lakin before his death. The note stated that the debt owed by Lakin arose during his lifetime. Though Pribil continued in his employment after Lakin's death, for purposes of compensation due under the note, the fact that Lakin did not incorporate Lakin Enterprises indicates that at Lakin's death, Pribil no longer worked for Lakin personally and any additional work would be chargeable to the estate.[25] Recovery is permitted for services rendered to a decedent during his or her lifetime if evidence shows that services were rendered under an express contract, either written or oral, to pay for them.[26]

We conclude that the debt was for deferred wages earned by Pribil during Lakin's life. As such, the debt was not for wages earned after Lakin's death or for an administrative expense of the estate. In order for the debt to be a valid debt of the estate, a claim needed to be filed.

### (b) Filing of Claim

Neb. Rev. Stat. § 30-2486 (Reissue 2016) sets forth two ways in which a claim against an estate may be presented. Under § 30-2486(1), the claim may be filed with the probate court. Alternatively, under § 30-2486(2), a claimant may file suit to recover the amount of the claim, so long as the suit is filed within the time period provided for filing claims with the estate.

Here, it is undisputed that Pribil did neither. Pribil did not file a written statement of his claim with the clerk of the court, nor did he commence a court proceeding against Kilzer, the copersonal representative of Lakin's estate.

---

[25] See, *In re Estate of Skade, supra* note 21; *Phifer, supra* note 21.

[26] See *In re Estate of Baker, supra* note 21.

Despite this record, appellees contend that on April 26, 2016, approximately 29 days after Lakin's death, Pribil discussed the note with Kilzer and with an attorney hired to represent the copersonal representatives. The next day, Pribil emailed a copy of the note, a letter, and his calculation of interest to the attorney and Kilzer. Appellees argue that the same should constitute notice of the claim.

[23] This court has held, however, that mere notice to a representative of an estate regarding a possible demand or claim against the estate does not constitute presenting or filing a claim under the statute.[27] In *J.R. Simplot Co. v. Jelinek*,[28] a company provided crop services to the decedent's estate. When payments for the services were not made, the company filed a "'Demand for Notice'" with the county court and then filed an action against the estate's personal representative.[29] The demand for notice simply stated that the company had a financial interest in the estate and held an outstanding claim, but failed to include either a basis for the claim or the amount due.[30] In determining whether the company's demand for notice operated as a timely claim under § 30-2486, we looked to our past decision in *In re Estate of Feuerhelm*.[31] In doing so, we explained that the claim in *In re Estate of Feuerhelm* was deficient, in part, because "'[a]lthough the language of [the] claim did alert the personal representative to the possibility of a claim by the trust, [the] claim did not contain a demand . . . upon the estate for satisfaction of any obligation. . . .'"[32] We also explained that if notice were accorded the stature

---

[27] *J.R. Simplot Co. v. Jelinek*, 275 Neb. 548, 748 N.W.2d 17 (2008); *In re Estate of Feuerhelm*, 215 Neb. 872, 341 N.W.2d 342 (1983).

[28] *J.R. Simplot Co., supra* note 27.

[29] *Id.* at 556, 748 N.W.2d at 25.

[30] *Id*.

[31] *In re Estate of Feuerhelm, supra* note 27.

[32] *J.R. Simplot Co., supra* note 27, 275 Neb. at 557, 748 N.W.2d at 25.

of a claim, the resultant state of flux and uncertainty would frustrate and avoid the purpose and objectives of the non-claim statute.[33]

Here, Pribil merely gave notice of the claim to Kilzer, but did so in a manner that failed to comply with the plain language of § 30-2486(2). Thus, we find no reason why Pribil's letter or notice of his claim to Kilzer should be considered sufficient to constitute a proper demand or presentation of a claim under § 30-2486. As such, we conclude that Pribil failed to properly file or present a claim against Lakin's estate.

### (c) Failure to File Claim

[24] Neb. Rev. Stat. § 30-2485 (Reissue 2016) sets forth the limitations on presentation of claims and provides as follows:

> (a) All claims against a decedent's estate which arose before the death of the decedent, including claims of the state and any subdivision thereof, whether due or to become due, absolute or contingent, liquidated or unliquidated, founded on contract, tort, or other legal basis, if not barred earlier by other statute of limitations, are barred against the estate, the personal representative, and the heirs and devisees of the decedent, unless presented as follows:
>
> Within two months after the date of the first publication of notice to creditors if notice is given in compliance with sections 25-520.01 and 30-2483, except that claims barred by the nonclaim statute at the decedent's domicile before the first publication for claims in this state are also barred in this state. If any creditor has a claim against a decedent's estate which arose before the death of the decedent and which was not presented within the time allowed by this subdivision, including any creditor who did not receive notice, such creditor may apply to the

---

[33] *J.R. Simplot Co., supra* note 27.

court within sixty days after the expiration date provided in this subdivision for additional time and the court, upon good cause shown, may allow further time not to exceed thirty days;

(2) Within three years after the decedent's death if notice to creditors has not been given in compliance with sections 25-520.01 and 30-2483.

(b) All claims . . . against a decedent's estate which arise at or after the death of the decedent . . . are barred . . . unless presented as follows:

. . . .

(2) Any . . . claim [other than one based on a contract with the personal representative], within four months after it arises.

[25-27] The purpose of § 30-2485 is to facilitate and expedite proceedings for distribution of a decedent's estate, including an early appraisal of the respective rights of interested persons and the prompt settlement of demands against the estate.[34] As a result of the nonclaim statute, the probate court or the personal representative can readily ascertain the nature and extent of the decedent's debts, determine whether any sale of property is necessary to satisfy a decedent's debts, and project a probable time at which the decedent's estate will be ready for distribution.[35] If presentation of a claim against a decedent's estate is required, a claim that is not duly and timely presented generally is barred, unless the delay is excused or relief is granted, and a claim that is not duly presented does not constitute a charge against, or a lien on, the estate.[36]

---

[34] *In re Estate of Feuerhelm, supra* note 27.

[35] *Id.* See Neb. Rev. Stat. ch. 30, art. 24, part 8 (Reissue 1979) (statutory general comment).

[36] 34 C.J.S. *Executors and Administrators* § 545 (2009). See, *In re Estate of Giventer, ante* p. 39, 964 N.W.2d 234 (2021); *In re Estate of Masopust*, 232 Neb. 936, 443 N.W.2d 274 (1989); *J. J. Schaefer Livestock Hauling v. Gretna St. Bank*, 229 Neb. 580, 428 N.W.2d 185 (1988).

As early as *Estate of Fitzgerald v. First Nat. Bank of Chariton*,[37] this court held: "An administrator [cannot] waive the defense of non-claim to the prejudice of his estate, either by agreement with the claimant or by neglecting to plead such defense." In *In re Estate of Golden*,[38] we reaffirmed that conclusion and, citing authorities, said:

> Claims not filed within the time limited by the county court, after due notice, are forever barred. . . . Time and notice given by the county court were in strict compliance with the statutes. The statute of nonclaim as a bar is more rigorously applied than the general statute of limitations. . . . In Nebraska an administrator cannot waive the defense of nonclaim to the prejudice of the estate.

As a result of our conclusion that Pribil was required to file a claim, but failed to do so, the amount owed Pribil under the note was barred against the estate, the personal representatives, and Lakin's heirs and devisees. Therefore, there is merit to the foundation's contention that the county court should have found that Pribil was required to file a claim with the estate. Accordingly, the county county's determination on that issue is hereby reversed.

### 6. Breach of Fiduciary Duty

In granting appellees summary judgment, the court noted that the question before it was whether the payment constituted "a breach of fiduciary duty by the personal representatives and trustees." Relying upon § 30-2476(21), the court found that the foundation had failed to prove its claims against the copersonal representatives, because Pribil and Kilzer showed that they paid the note in a manner consistent with the advice

---

[37] *Estate of Fitzgerald v. First Nat. Bank of Chariton,* 64 Neb. 260, 261, 89 N.W. 813, 813 (1902) (syllabus of the court).

[38] *In re Estate of Golden,* 120 Neb. 226, 230, 231 N.W. 833, 836 (1930). Accord, *In re Estate of Masopust, supra* note 36; *Supp v. Allard*, 162 Neb. 563, 76 N.W.2d 459 (1956).

of legal counsel and an accountant. The court then rejected the foundation's claim against the cotrustees, stating that appellees "distributed the assets of the Trust in a reasonable manner as permitted by the terms of the Trust and the directions of the Foundation."

The foundation argues that since appellees paid a barred claim, the county court erred in determining appellees did not breach their fiduciary duties as copersonal representatives and cotrustees. The foundation contends that appellees abused their power and took actions contrary to the foundation, as the primary trust beneficiary. In addition, the foundation calls attention to the following undisputed facts: Appellees did not notify the foundation of the note, appellees never requested permission to pay the note, and appellees liquated trust assets in order to fully pay the note. The foundation further argues that appellees should be required to repay all sums due and owing and that appellees should be removed and replaced.

Appellees emphasize other undisputed facts in the record. Appellees rely on language from the note and trust to argue, summarized, that Lakin intended to entrust the management of his assets to Pribil, "'a long time, trusted employee of [Lakin] with extensive background and expertise,'" and to Kilzer, Lakin's grandson. Brief for appellees at 5. Further, appellees argue that they acted in accordance with all of Lakin's specific instructions under the note, including to keep the payment confidential and to execute the payment so that it was made as a tax-free gift. Appellees contend that their actions fall within the discretion granted to personal representatives and trustees under Nebraska law and argue that even at the summary judgment stage, they are entitled to judgment as a matter of law.

[28] This court has held that a claim for breach of fiduciary duties is likened to professional malpractice.[39] The Court of Appeals has determined that in order to prove a cause of

---

[39] See *Community First State Bank v. Olsen*, 255 Neb. 617, 587 N.W.2d 364 (1998).

action for breach of a fiduciary duty, the moving party must prove the elements of negligence.[40] Therefore, in order for the foundation to prove that it is entitled to judgment on the breach of fiduciary duty cause of action, it must prove that appellees owed it a fiduciary duty, that appellees breached that duty, that their breach was the cause of the injury to it, and that it was damaged. Whether a breach of fiduciary duty has occurred is a question of fact.[41]

Nebraska law governing personal representatives of an estate reflects that under Neb. Rev. Stat. § 30-2464 (Reissue 2016), a personal representative is a fiduciary, and that a fiduciary relationship exists between a personal representative and the estate of the deceased, as well as the heirs, beneficiaries, and all persons interested in the estate.[42] It is the personal representative's duty to "settle and distribute the estate of the decedent in accordance with the terms of any probated and effective will and the Nebraska Probate Code, and as expeditiously and efficiently as is consistent with the best interests of the estate."[43] A personal representative's duty is to act on behalf of the estate with the end goal of distributing and closing that estate.[44]

A personal representative shall use the authority conferred upon him or her by the Nebraska Probate Code; the terms of the will, if any; and any order in proceedings to which he or she is a party for the best interests of successors to the estate. A personal representative is liable to interested persons

---

[40] *In re Louise V. Steinhoefel Trust*, 22 Neb. App. 293, 854 N.W.2d 792 (2014).

[41] 101 Am. Jur. *Trials* 1 (2006); 65 Am. Jur. *Proof of Facts* 3d 109 (2002). See, *Gillmore v. Morelli*, 472 N.W.2d 738 (N.D. 1991); *In re Estate of Breeden v. Gelfond*, 87 P.3d 167 (Colo. App. 2003); *Union Miniere, S.A. v. Parday Corp.*, 521 N.E.2d 700 (Ind. App. 1988); *Musselman v. Southwinds Realty, Inc.*, 146 Ariz. 173, 704 P.2d 814 (Ariz. App. 1985).

[42] *In re Estate of Rosso*, 270 Neb. 323, 701 N.W.2d 355 (2005).

[43] *Id.* at 331, 701 N.W.2d at 363.

[44] *J.R. Simplot Co., supra* note 27.

for damage or loss resulting from breach of his or her fiduciary duty.[45]

It is established under Nebraska law that a trustee has the duty to administer the trust in good faith, in accordance with its terms and the purposes and the interests of the beneficiaries, and in accordance with the Nebraska Uniform Trust Code.[46] The Nebraska Uniform Trust Code states that trustees owe the beneficiaries of a trust duties that include loyalty, impartiality, prudent administration, protection of trust property, proper recordkeeping, and informing and reporting.[47] A violation by a trustee of a duty required by law, whether willful, fraudulent, or resulting from neglect, is a breach of trust, and the trustee is liable for any damages proximately caused by the breach.[48]

[29,30] We pause to call attention to the summary judgment procedural posture of this case. As an appellate court, this court is considering the county court's summary judgment disposition of the foundation's fiduciary duty claims. Under Nebraska law, the party moving for summary judgment has the burden of proving that party's entitlement to judgment as a matter of law.[49] On a motion for summary judgment, the question is not how a factual issue is to be decided but whether any real issue of material fact exists.[50] Entry of summary judgment is appropriate only if there are no genuine issues of fact and if, as a consequence, one party is entitled to judgment as a matter of law.[51]

---

[45] See Neb. Rev. Stat. § 30-2473 (Reissue 2016).

[46] *In re William R. Zutavern Revocable Trust*, 309 Neb. 542, 961 N.W.2d 807 (2021); *In re Estate of Forgey*, 298 Neb. 865, 906 N.W.2d 618 (2018).

[47] *Id.*

[48] *Trieweiler v. Sears*, 268 Neb. 952, 689 N.W.2d 807 (2004).

[49] *Bogardi v. Bogardi*, 249 Neb. 154, 542 N.W.2d 417 (1996).

[50] *Wynne v. Menard, Inc.*, 299 Neb. 710, 910 N.W.2d 96 (2018); *Healy v. Langdon*, 245 Neb. 1, 511 N.W.2d 498 (1994); *Schlines v. Ekberg*, 172 Neb. 510, 110 N.W.2d 49 (1961).

[51] *Blankenship v. Omaha P. P. Dist.*, 195 Neb. 170, 237 N.W.2d 86 (1976).

[31] The summary judgment standard is not affected where the parties file cross-motions. The fact that both parties simultaneously are arguing that there is no genuine dispute of fact does not establish that a trial is unnecessary.[52] As stated by the U.S. Court of Appeals for the Third Circuit in *Rains v. Cascade Industries, Inc.*,[53] if an issue of material fact exists on cross-motions for summary judgment, "it must be disposed of by a plenary trial and not on summary judgment."

We have thus far held that a claim was required to be filed with the estate in this case as a matter of law. Despite no claim's being filed, appellees cite to various provisions of the Nebraska Probate Code to argue that the payment was nevertheless authorized. Appellees' arguments here are without merit and contrary to Nebraska law. Our conclusion that the estate's payment of the note was invalid creates a different perspective from which to view the undisputed facts contained in the summary judgment record. The often-stated rule in Nebraska is that in reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted, and gives that party the benefit of all reasonable inferences deducible from the evidence.[54]

Having given full consideration to the record and the parties' arguments, we conclude that the foundation has raised genuine issues of material fact regarding its breach of fiduciary

---

[52] 10A Charles Alan Wright et al., Federal Practice and Procedure § 2720 (4th ed. 2016), citing *F. H. McGraw & Co. v. New England Foundation Co.*, 210 F.2d 62 (1st Cir. 1954); *Home Ins. Co. v. Aetna Cas. & Sur. Co.*, 528 F.2d 1388 (2d Cir. 1976); *Levine v. Fairleigh Dickinson University*, 646 F.2d 825 (3d Cir. 1981); *Podberesky v. Kirwan*, 38 F.3d 147 (4th Cir. 1994); *Capital Films Corp. v. Charles Fries Productions*, 628 F.2d 387 (5th Cir. 1980); and *B.F. Goodrich Co. v. U.S. Filter Corp.*, 245 F.3d 587 (6th Cir. 2001).

[53] *Rains v. Cascade Industries, Inc.*, 402 F.2d 241, 245 (3d Cir. 1968). Accord *Peterson v. Homesite Indemnity Co.*, 287 Neb. 48, 840 N.W.2d 885 (2013).

[54] *Sundermann, supra* note 1.

claims against appellees. Summary judgment should not have been granted.[55] The judgment of the trial court is reversed and the cause is remanded for further proceedings according to law.

## 7. § 6-1437

The foundation argues, pursuant to § 6-1437 of the Supreme Court rules, that Pribil breached his duties as a copersonal representative, because he failed to obtain court permission prior to paying himself in excess of $250. However, we conclude that a dispute of material fact exists on this issue as well. Our record is not clear on the source of the payment, who made the payment, and in what capacity. While the record does contain Pribil's deposition testimony on this issue, the check is not in our record. Resolution of this issue must be remanded to the trial court.

## 8. Judicial Admission

Because the issue will likely recur on remand, we address whether Pribil made a judicial admission in his application for informal probate. An appellate court may, at its discretion, discuss issues unnecessary to the disposition of an appeal where those issues are likely to recur during further proceedings.[56]

The foundation argues that Pribil made a judicial admission concerning his status as a creditor when he filed his application for informal probate of the will and informal appointment of a personal representative. Specifically, the foundation relies on paragraph 8, which indicates that "the nominated personal representative is neither indebted to the estate nor a creditor of the estate."

---

[55] See, e.g., *Valentine Production Credit Assn. v. Spencer Foods, Inc.*, 196 Neb. 119, 241 N.W.2d 541 (1976); *Youngs v. Wagner*, 172 Neb. 735, 111 N.W.2d 629 (1961); *Ingersoll v. Montgomery Ward & Co., Inc.*, 171 Neb. 297, 106 N.W.2d 197 (1960).

[56] *Fitzgerald v. Community Redevelopment Corp.*, 283 Neb. 428, 811 N.W.2d 178 (2012).

[32-34] A judicial admission, as a formal act done in the course of judicial proceedings, is a substitute for evidence and thereby waives and dispenses with the production of evidence by conceding for the purpose of litigation that the proposition of fact alleged by an opponent is true.[57] Judicial admissions must be deliberate, clear, and unequivocal, and they do not extend beyond the intent of the admission as disclosed by its context.[58] Formal acts that may operate as judicial admissions include statements made in pleadings.[59]

Contrary to the foundation's argument, the record indicates that at the time Pribil executed the application for informal probate, he did not believe himself to be a creditor, as he considered the amount owed to him ordinary wages which could be paid as an ongoing business expense. Any such admission of Pribil was not deliberate, clear, and unequivocal. This assignment of error is without merit.

## V. CONCLUSION

The county court erred in determining that Pribil's failure to file a claim with the estate did not bar the claim. Disputed issues of material fact remain regarding the foundation's fiduciary duty claims. As a result, the court erred in granting appellees' motions for summary judgment. This matter must be and is remanded to the county court for further proceedings consistent with this opinion.

Reversed and remanded for
further proceedings.

Miller-Lerman and Papik, JJ., not participating.

---

[57] *State v. Hernandez*, 309 Neb. 299, 959 N.W.2d 769 (2021).

[58] *Id.*

[59] *Id.*